UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| IN RE: DAIRY FARMERS OF AMERICA, INC. CHEESE ANTITRUST LITIGATION ) ) ) ) | |
| THIS DOCUMENT RELATES TO: ) ) | |
| *Adam Properties, Inc. v. Dairy Farmers of America, Inc.*, No. 08-cv-7232 (WJH) ) ) ) | No. 09-cv-03690 |
| *Stew Leonard's, Inc. v. Dairy Farmers of America, Inc.*, No. 08-cv-7394 (WJH) ) ) | MDL No. 2031 |
| ) | Judge William J. Hibbler |
| *Valley Gold LLC v. Dairy Farmers of America, Inc.*, No. 09-cv-387 (WHJ) ) ) ) | |
| *Indriolo Distributors, Inc. v. Dairy Farmers of America, Inc.*, No. 09-cv-1599 (WJH) ) ) ) | |
| *Knutson's, Inc. v. Dairy Farmers of America, Inc.*, No. 09-cv-2074 (WJH) ) ) ) | |

**KNUTSON'S, INC.'S REPLY MEMORANDUM IN SUPPORT OF MOTION
FOR CONSOLIDATION OF DIRECT PURCHASER ACTIONS
AND APPOINTMENT OF INTERIM CLASS LEAD COUNSEL**

Pursuant to the Court's November 23, 2009 Order, Plaintiff Knutson's, Inc. ("Knutson's") submits this memorandum in further support of its November 17, 2009 motion for consolidation of the direct purchaser actions and appointment of Wolf Haldenstein Adler Freeman and Herz LLC ("Wolf Haldenstein") as Interim Class Lead (or Co-Lead) Counsel and in reply to the November 17, 2009 responses filed by Plaintiff Indriolo Distributors, Inc.; Plaintiffs Adam Properties, Inc., Stew Leonard's, Inc. and Valley Gold LLC; and Defendants Dairy Farmers of America, Inc., Keller's Creamery, LP, Gerald Bos, Gary Hanman, Glenn Millar and Frank Otis (collectively, "Defendants").

**I.     INTRODUCTION**

Before the Court are three proposals for selection of interim lead class counsel pursuant to Fed. R. Civ. P. 23(g): (1) appointment of Wolf Haldenstein as lead counsel; (2) appointment of Lovell Stewart Halebian LLP ("Lovell Stewart") as lead counsel and Miller Law LLC ("Miller Law") as liaison counsel; and (3) appointment of a multi-tier structure consisting of Milberg LLP ("Milberg") and Carella, Byrne, Bain, Gilfillan, Cecchi, Stewart & Olstein ("Carella Byrne") as co-lead counsel, Freed & Weiss LLC ("Freed & Weiss") and Seeger Weiss LLP ("Seeger Weiss") as executive committee and Wexler Wallace LLP ("Wexler Wallace") as liaison counsel (collectively, "Milberg Group"). What is plain from the responses filed by the direct purchaser plaintiffs is that selection of Wolf Haldenstein as lead (or co-lead) class counsel would best serve the interests of the class.

In addition, Defendants have filed a joint response in which they moved for entry of their own proposed pretrial order providing, *inter alia*, for a complete stay of discovery pending resolution of their promised motions to dismiss the yet to be filed consolidated complaint. As discussed below, Defendants' proposed stay of discovery is both premature and unwarranted. The case management order proposed by Defendants is therefore seriously flawed and should be rejected by the Court.

**II.    ARGUMENT**

    **A.     Wolf Haldenstein's Proposal Best Serves the Case**

Despite the Milberg Group's attempt to justify appointment of its bloated structure, the fact remains that Wolf Haldenstein's proposal best serves the interest of the case. To be clear: Wolf Haldenstein has worked repeatedly with each of the firms in the Milberg Group and with Lovell Stewart. Wolf Haldenstein has *no* problem with working with them here. Lovell

Stewart's qualifications are outstanding. The Milberg Group proposal, however, should give the Court pause, as it does Knutson's, as it is bloated, consisting of a varied mix of counsel.

The Milberg Group does not dispute Wolf Haldenstein's qualifications or experience, arguing instead that the Court should select the Milberg Group because it has the support of more counsel (all but one of whom are included in the Milberg Group structure) and the Court should not disrupt the "private ordering." *However, to be clear, it is not the number of counsel that supports a position; rather it is the number of plaintiffs, for after all it is the parties that select counsel. Here the Milberg Group is presumably supported by three plaintiffs. Two plaintiffs advocate a more streamlined and efficient approach. A single plaintiff difference is hardly an endorsement of the Milberg Group's position.* The Court's task is to select lead counsel who would best serve the interest of the class based on the criteria set forth in Fed. R. Civ. P. 23(g), not to rubberstamp the leadership structure negotiated among some of the counsel. The *Manual for Complex Litigation* specifically cautions against "[d]eferring to proposals by counsel without independent examination, even those that seem to have the concurrence of the majority of those affected …." *Manual for Complex Litigation (Fourth)* ("*Manual*") § 10.224. In one of the cases cited by the Milberg Group, *In re Scrap Metal Antitrust Litigation*, 2002 WL 31988203 (N.D. Ohio Aug. 5, 2002), the court rejected the "negotiated deal among counsel," noting that "the Manual warns the Court against accepting deals of counsel at face value without making an independent evaluation" *Id*. at *1.

The Milberg Group's contention that the Wolf Haldenstein proposal would represent a "go it alone" approach is similarly without merit. Appointing Wolf Haldenstein as lead counsel will not, as the Milberg Group suggests, "deprive the class of the benefits of cooperation and resource-sharing." The Milberg Group proposal represents not cooperation but duplication and

15542

waste. This litigation, as everyone agrees, is complicated - all the more reason to appoint qualified counsel who will not hesitate to select those best able to do each task rather than those with "votes." The Milberg Group's suggestion that Wolf Haldenstein would take a "my way or the highway" approach is belied by the numerous examples of cases in which Wolf Haldenstein has successfully led the coordinated efforts of plaintiffs' counsel to achieve successful results for the class. There is no need or justification for appointment of the redundant and unwieldy Milberg Group structure.

The Court should also reject the Milberg Group's contention that it should be selected because one of its plaintiffs, Stew Leonard's, bills itself as the "World's Largest Dairy Store" and therefore the largest named stakeholder. *To do so is to elevate advertising over substance.* While the size of a plaintiff's claim[1] has some relevance to selection of lead counsel in a securities action (with which the Milberg Group may be more familiar), it has not been found by the courts to be a significant factor under Rule 23(g) in antitrust cases.[2] The size of Stew Leonard's claim may in fact counsel against selection of the Milberg Group since a plaintiff with a large enough claim may be best advised to pursue such a claim on an individual basis.

As previously discussed in its motion papers and response, Knutson's is a trader of the futures directly at issue in this litigation. The Milberg Group's contention that Knutson's claims

---

[1] The Milberg Group does not actually show that Stew Leonard's has the largest claim, only that it has a significant *total sales* volume. Stew Leonard's complaint does not specify from whom it purchased cheese and milk or in what quantities. Nor is there any showing that Stew Leonard's sales volume translates into the largest amount of damages resulting from manipulation of milk and cheese futures.

[2] Under the Private Securities Litigation Reform Act ("PSLRA"), the plaintiff with the largest financial stake in a securities action is presumed to be the most adequate plaintiff and generally selects the firm or firms that will act as lead counsel. 15 U.S.C. § 78u-4. The courts have not, however, embraced the PSLRA model of lead counsel selection in antitrust litigation. Although the Milberg Group cites *In re Scrap Metal Antitrust Litigation*, 2002 WL 31988203 (N.D. Ohio Aug. 5, 2002), as an antitrust case in which the court appointed as lead counsel the firm representing the plaintiff with the largest stake, it is not the norm. Nor does the case provide any basis for elevating that factor over more important considerations set forth in Rule 23(g). Significantly, the court noted that the lead counsel selected also had the "edge in terms of experience in the antitrust arena." *Id*. at *2, n.1.

4

15542

are merely a "subset" of the cheese and milk purchaser class claims is inaccurate and misses the point. Knutson's does not purchase cheese or milk and its claims differ accordingly. More important, Knutson's role as a trader of the futures at issue places it on the closest level to the alleged illegal price manipulation of milk and cheese futures than are the plaintiffs represented by the Milberg Group who purchased not futures but cheese and milk products from varying sources. As Knutson's counsel, Wolf Haldenstein will have the benefit of Knutson's knowledge and experience, an advantage that further supports the selection of Wolf Haldenstein as lead counsel.[3]

### B. Defendants' Proposed Stay of Discovery Is Premature and Unwarranted

Even though no consolidated complaint has been filed, no discovery has been served, and no motions to dismiss have been filed, Defendants have submitted a case management order providing for a blanket stay of discovery until all potential motions to dismiss have been resolved. Defendants' request is both premature and unjustified.[4]

Fed. R. Civ. P. 26(c) provides that the Court may "issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense" only upon a showing of "good cause." Defendants' request that the Court stay all discovery in the abstract before there is anything before the Court from which it could determine whether good cause

---

[3] The Court should also reject the Milberg Group's contention that it is entitled to serve as lead counsel because its plaintiffs filed their complaints before Wolf Haldenstein's did. *See Scrap Metal*, 2002 WL 31988203 at *1 ("consideration of the 'first-to-file' status when making lead counsel determinations has been rejected by many courts"). Progress in all the actions was delayed until now as a result of the proceedings before the Judicial Panel on Multidistrict Litigation. The Milberg Group's claim that it has put more work into this litigation is unfounded. As it states in its response, the Milberg Group plaintiffs filed their complaints shortly after the announcement of the CFTC settlement.

[4] While Knutson's does not object to most of the rest of Defendants' proposed order, the order also lacks a necessary provision, included in Knutson's proposed order, setting forth the responsibilities of lead class counsel. Knutson's takes no position with respect to the provisions in the Defendants' proposed order relating to indirect plaintiffs.

5

exists is without merit. At the very least, the Court should defer ruling on any motions for a stay of discovery until this litigation has gotten underway and the Court has a basis for determining whether such as stay would be appropriate.

Defendants' only asserted argument for a stay of discovery is their belief – common among defendants – that Plaintiffs' consolidated complaint (which has not yet been filed) will not survive challenge under *Bell Atlantic v. Twombly*, 550 U.S. 544 (2007), and *Ashcroft v. Iqbal*, 129 S. Ct. 1937 (2009), and that Defendants they should not be put to the burden of discovery until the Court has ruled on their motions to dismiss. The courts have, however, emphasized that "the mere filing of [a Rule 12(b)(6)] motion does not automatically stay discovery, nor does it mean that a court will automatically grant a stay simply because the defendant asks for one." *Syngenta Seeds, Inc. v. BTA Branded, Inc.*, No. 05 C 6673, 2007 WL 3256848, at *1 (N.D. Ill. Nov. 1, 2007).

Nor does *Twombly* or *Iqbal* provide any support for Defendants' request for a blanket stay of discovery. Both cases, like *Limestone Dev. Corp. v. Village of Lemont*, 520 F.3d 797 (7th Cir. 2008); *Beck v. Dobrowski*, 559 F.3d 680 (7th Cir. 2009); and *Ashahi Glass Co. v. Pentech Pharms., Inc.*, 289 F. Supp.2d 986 (N.D. Ill. 2003), on which Defendants also rely, involved application of pleading standards, not stays of discovery. That *Twombly* does not provide a basis for a discovery stay was best explained by the court in *In re Flash Memory Antitrust Litigation*, No. C 07-0086, 2008 WL 62278, at *3 (N.D.Cal. Jan. 4, 2008):

> *Twombly* does not erect an automatic, blanket prohibition on any and all discovery before an antitrust plaintiff's complaint survives a motion to dismiss. While the *Twombly* court was certainly concerned with the expense of discovery in antitrust cases, its resolution of this concern was to require plaintiffs to plead non-conclusory, factual allegations giving rise to a plausible claim or claims for relief. The Court did not hold, implicitly or otherwise, that discovery in antitrust actions is stayed or abated until after a complaint survives a Rule 12(b)(6) challenge. Such a reading of that opinion is overbroad and unpersuasive.

6

15542

*Id.* at *3 (citations and internal quotation marks omitted).

Other courts have similarly rejected Defendants' unfounded "*Twombly* argument." Although granting a stay of discovery based on the circumstances in that case, the court in *In re Graphics Processing Units Antitrust Litigation*, No. C 06-07417, 2007 WL 2127577, at *4 (N.D. Cal. July 24, 2007), cited by Defendants, flatly rejected the contention that "*Twombly* stands for the proposition that antitrust plaintiffs cannot subject defendants to *any* discovery until the Court determines that the plaintiffs have articulated a plausible entitlement to relief," concluding that such an argument "upends the Supreme Court's holding; the decision used concerns about the breadth and expense of antitrust discovery to identify pleading standards for complaints, it did not use pleading standards to find a reason to foreclose all discovery." The court in *In re SRAM Antitrust Litigation*, 580 F. Supp.2d 896 (N.D. Cal 2008), similarly held that *Twombly* does not bar discovery prior to a motion to dismiss and ordered defendants to produce discovery.

Nor do any of the other cases cited by Defendants provide support for their position. The court in *DSM Desotech Inc. v. 3D Systems Corp.*, No. 08 CV 1531, 2008 WL 4812440 (N.D. Ill. Oct. 28, 2008), granted a stay of discovery only after considering the discovery requests served by plaintiffs (which the court determined to be "extensive, voluminous, and expensive to produce") and the burden they would impose on defendants.[5] Here, Defendants ask the Court to enter a stay of discovery in the abstract, before any discovery has been served.

---

[5] The court in *DSM Desotech* also pointed out that the party seeking a stay of discovery is required under the Local Rules to certify to the Court that it "has in good faith conferred or attempted to confer with the other affected parties in an effort to resolve the dispute." 2008 WL 4812440, at *1 (citing N.D. Ill. L.R. 37.2). Although Defendants circulated a copy of its proposed case management order to Plaintiffs in an effort to reach an agreement, no attempt was made by Defendants to negotiate the scope or timing of discovery.

7

The facts in *Standard Iron Works v. Arcelormittal USA, Inc.*, No. 08 C 5214 (N.D. Ill. Nov. 21, 2008), are also very different from those presented here. In that case, discovery was stayed by the court without briefing, coincident with the fast tracking of the motions to dismiss. Unlike *Standard Iron Works*, this case has already been delayed for a significant length of time during the pendency of the transfer motion before the Judicial Panel on Multidistrict Litigation. Nearly a year has already passed since the first complaint was filed in December 2008. Unlike the situation in *Standard Iron Works*, in which the first filed complaint was deemed the operative consolidated complaint, Defendants' motions to dismiss will also be delayed until after the consolidated complaint – necessary because the Plaintiffs assert claims on behalf of different classes – is filed.

Particularly given the delay that has already occurred, Defendants' contention that Plaintiffs would be only minimally prejudiced by a stay of discovery is untrue. Plaintiffs would certainly be prejudiced by the consequences of additional delay, including fading memories of witnesses and other loss of evidence. Granting a stay of discovery that would further delay resolution of this litigation is especially unwarranted in a class action where the public interest is also implicated. *See, e.g., In re Plastics Additives Antitrust Litigation*, No. 03-2038, 2004 WL 2743591, at *8 (E.D. Pa. Nov. 29, 2004) (denying a stay of discovery where "[t]he public's interest in vigorously enforcing national anti-trust laws through the expeditious resolution of a private antitrust litigation is particularly great").

The Court should reject Defendants' case management order with its blanket discovery stay and enter the order proposed by Knutson's instead.

### III. <u>CONCLUSION</u>

For the foregoing reasons and those set forth in Knutson's' November 17, 2009 motion papers and December 4, 2009 response, Knutson's respectfully requests that the Court enter Knutson's proposed Pretrial Order No. 1 consolidating the direct purchaser actions for pretrial purposes and appointing Wolf Haldenstein Adler Freeman & Herz LLC as Interim Class Lead (or co-lead) Counsel.

Dated: December 11, 2009

By: /s/ Mary Jane Fait

Mary Jane Fait
Theodore B. Bell
Michael D. Yanovsky
**WOLF HALDENSTEIN ADLER
   FREEMAN & HERZ LLC**
55 West Monroe Street, Suite 1111
Chicago, Illinois 60603
Tel: (312) 984-0000
Fax: (312) 984-0001

Fred Taylor Isquith
**WOLF HALDENSTEIN ADLER
   FREEMAN & HERZ LLP**
270 Madison Avenue
New York, New York 10016
Tel: (212) 545-4600
Fax: (212) 545-4653

*Counsel for Plaintiff Knutson's, Inc.*

9

15542

## **CERTIFICATE OF SERVICE**

I, Mary Jane Fait, hereby certify that on December 11, 2009, service of ***Knutson's, Inc.'s Reply Memorandum in Support of Motion for Consolidation of Direct Purchaser Actions and Appointment of Interim Class Lead Counsel*** was accomplished on all counsel of record pursuant to ECF as to Filing Users and by U.S. mail to:

> Paul W. Rebein
> **REBEIN LAW FIRM PLLC**
> 500 East Kennedy Blvd., Suite 100
> Tampa, FL 33602

           /s/ Mary Jane Fait
           Mary Jane Fait

15542