IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| IN RE: DAIRY FARMERS OF AMERICA, INC. CHEESE ANTITRUST LITIGATION | ) ) ) | No. 09-cv-03690 MDL No. 2031 |
| THIS DOCUMENT RELATES TO: | ) ) | Hon. William J. Hibbler |
| *Indriolo Distributors, Inc. v. Dairy Farmers of America, Inc.*, No. 09-cv-1599 | ) ) ) | |
| *Adam Properties, Inc. v. Dairy Farmers of America, Inc.*, No. 08-cv-7232 | ) ) ) | |
| *Stew Leonard's, Inc. v. Dairy Farmers of America, Inc.*, No. 08-cv-7394 | ) ) ) | |
| *Valley Gold LLC v. Dairy Farmers of America, Inc.*, No. 09-cv-387 | ) ) ) | |
| *Knutson's, Inc. v. Dairy Farmers of America, Inc.*, No. 09-cv-2074 | ) ) ) | |

CONSOLIDATED REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF
MOTION TO APPOINT LOVELL STEWART HALEBIAN LLP AS INTERIM CLASS
COUNSEL FOR DIRECT PURCHASER PLAINTIFFS AND FOR CONSOLIDATION
<u>OF THE DIRECT PURCHASER ACTIONS</u>

**Preliminary Statement**

Plaintiff Indriolo Industries, Inc. ("Indriolo") respectfully submits this memorandum in reply (a) to the Milberg-Cecchi group's opposition to the appointment of Lovell Stewart Halebian LLP ("Lovell Stewart") as interim class counsel[1], and (b) to the Defendants' request, as part of the consolidation order, to stay discovery and disclosure pending the outcome of the motion to dismiss.[2]

The Milberg-Cecchi group effectively concedes that Lovell Stewart has the most experience with "the types of claims asserted" here, and the most "knowledge of the law" applicable to the "esoteric" subject matter here.[3] See Point I.A. 1-2 *infra*; *Cicilline v. Jewel Food Stores, Inc.*, 542 F.Supp.2d 831, 841 (N.D. Ill. 2008) ("Counsel who regularly pursue similar claims are more likely to appropriately and efficiently serve the class and bring more expertise than less-experienced counterparts"); *In re Bear Stearns Cos., Inc. Sec., Deriv. & ERISA Litig.*, 2009 WL 50132 at *11 (S.D.N.Y. Jan. 5, 2009) (Counsel's "experience in, and knowledge of, the applicable law in this field" is the "most persuasive" factor when choosing lead counsel under Rule 23(g)(1)(A) quoting *In re Terazosin Hydrochloride,* 220 F.R.D. 672, 702 (S.D. Fla. 2004)).

---

[1] See Plaintiffs Adam Properties, Inc., Stew Leonard's, Inc. and Valley Gold LLC's Memorandum In Opposition To Appoint Lovell Stewart and Wolf Haldenstein As Interim Class Lead Counsel For The Direct Purchaser Class ("Milberg-Cecchi Opp.").
　As used herein, the "Milberg-Cecchi" group refers to the fine firms of Milberg LLP ("Milberg"), Carella, Byrne, Bain, Gilfillan, Cecchi, Stewart & Olstein, Freed & Weiss LLC, Seeger Weiss LLP and Wexler Wallace LLP.

[2] See Defendants' Joint Response To Plaintiffs' Motions To Consolidate Actions, For The Appointment of Class Counsel And For The Entry of Case Management Order No. 1 ("Joint Response").

[3] *See, e.g.*, *Merrill Lynch, Pierce, Fenner & Smith v. Curran*, 456 U.S. 353, 356 (1982) quoting H.R. Rep. No. 93-975, p. 1 (1974), 1974 U.S. Code Cong & Admin. News at 5843.

Instead, Milberg-Cecchi's arguments largely focus on matters that are outside of the mandatory criteria of Rule 23(g) and, indeed, are contrary to such mandatory criteria. See I.B. *infra*.

Finally, Defendants' proposals to deny a consolidated amended complaint to Plaintiffs and stay discovery should be rejected. Point II *infra*.

I. **THE MILBERG-CECCHI OPPOSITION EFFECTIVELY DEMONSTRATES THAT APPOINTING LOVELL STEWART AS INTERIM CLASS COUNSEL IS IN THE BEST INTEREST OF THE CLASS**

   A. **Milberg-Cecchi Effectively Fails To Dispute That Lovell Stewart Is The Best Able To Represent The Class Under Most of The Mandatory Criteria**

      1. **Rule 23(g)(1)(A)(ii)—This Court And Most Others Have Held That Experience With "Similar Claims" Is The Most Important Factor in Selecting Class Counsel—And Milberg-Cecchi Effectively Concedes That Lovell Stewart Has Vastly More "Experience In Handling…The Types of Claims Asserted In This Action"**

This Court has recognized that "counsel who regularly pursue similar claims are more likely to appropriately and efficiently serve the class and bring more expertise than less-experienced counterparts." *Cicilline v. Jewel Food Stores, Inc.*, 542 F.Supp.2d 831, 841 (N.D. Ill. 2008).

Indeed, there is agreement among the courts that counsel's "experience in, and knowledge of, the applicable law in this field" is the "most persuasive" factor when choosing lead counsel under Rule 23(g)(1)(A). *In re Bear Stearns Cos., Inc. Sec., Deriv. & ERISA Litig.*, 2009 WL 50132 at *11 (S.D.N.Y. Jan. 5, 2009) quoting *In re Terazosin Hydrochloride,* 220 F.R.D. 672, 702 (S.D. Fla. 2004).

Counsel who filed the last two complaints had knowledge of the area of the law and did work in identifying the claims that justified appointing them as interim co-lead counsel under

Rule 23(g)(1)(A)(i). *Miller v. Beazer Homes USA, Inc.*, 2007 WL 3005332 (N.D. Ga. Oct. 11, 2007).

### a. Milberg-Cecchi's Failure To Contest The Record Of Lovell Stewart's Vastly Greater Experience

In its opposition arguments, the Milberg-Cecchi group forthrightly does not contest that Lovell Stewart has, by far, the most experience of counsel here with the mandatory criterion of "the types of claims asserted in this action." Rule 23(g)(1)(A)(ii). *Compare* Motion and Memorandum of Law In Support of Motion To Consolidate Direct Purchaser Actions and Appoint Lovell Stewart Halebian LLP Interim Class Lead Counsel And Miller Law LLC Liaison Counsel For Direct Purchaser Plaintiffs ("Lovell Stewart Motion") at pp. 7-10 *with* Milberg-Cecchi Opp. *passim*.

In fact, Lovell Stewart has obtained the two largest class action commodity price manipulation settlements in the history of the Commodity Exchange Act, is the only counsel here to try a price manipulation / price-fixing case, and is the only counsel here to be appointed as sole lead counsel or chairman of co-lead counsel or even as co-lead counsel in such a case. *Id.*[4]

### 2. Rule 23(g)(1)(A)(iii)—The Milberg-Cecchi Opposition Demonstrates That Lovell Stewart Has Far More "Knowledge of The Applicable Law" Than All The Other Firms Combined

The Milberg-Cecchi group has also effectively conceded that the claims and applicable law here involves antitrust claims alleging commodity futures price manipulation and price

---

[4] Milberg-Cecchi's attempt to list experience with commodity futures manipulation is to cite to *Loeb Industries, Inc. v. Sumitomo Corp.*, 306 F.3d 469, 482-484 (7th Cir. 2002) ("*Loeb*").
   However, the attorneys at the former Milberg firm were merely "counsel to one of the plaintiffs" in *Loeb*. See Milberg Resume at p. 2. They were not counsel for the class and were instead counsel in a tag along case. *Id.*
   Moreover, in their moving papers and complaints herein, the Milberg-Cecchi group failed to mention *Loeb* and failed to plead that any of their plaintiffs purchased pursuant to contracts the price term of which was based on the allegedly manipulated Chicago Mercantile Exchange commodity prices here.

3

fixing. *Compare* Lovell Stewart Motion at pp. 7-10, 12 (demonstrating Lovell Stewart's greater knowledge) *with* Milberg-Cecchi Opp. *passim*.

Again, there is agreement among the courts that counsel's experience (see sub-point 1 *supra*) and "knowledge of the applicable law" under Rule 23(g)(1)(A)(iii) are the most important factors when choosing counsel. *E.g., In re Bear Stearns* at *11 *supra*.

        a.        **The Experience With And Knowledge Of The Claims At Issue Is Especially Important Where, As Here, The Interim Class Counsel Appointment Is For The One Year Period Covering The Preparation Of The Consolidated Amended Complaint And The Opposition To The Motion To Dismiss The Complaint**

For the first year of this litigation, the most important endeavors are refining and finalizing the claims in the consolidated amended complaint, and briefing and opposing the Defendants' motions to dismiss. Particularly for these tasks, it is critical to select the counsel with the most experience with similar claims. This will provide the class with the best chance to plead proper claims in the consolidated complaint, and the best chance to defeat the motions to dismiss.

Lovell Stewart was the only firm to plead a claim for agreement in restraint of trade and the only firm to plead all the elements of a monopoly claim. See next sub-point *infra*. It follows that Lovell Stewart will be the best firm to prepare the consolidated amended complaint and to brief and defend against the motions to dismiss. *Id*.

The Milberg-Cecchi group has now conceded that Lovell Stewart has, by far, the most experience with and knowledge of the types of claims asserted here. Therefore, it is particularly appropriate that Lovell Stewart be appointed as interim class counsel in this case.

        3.        **Rule 23(g)(1)(A)(i)—The Milberg-Cecchi Opposition Demonstrates That Lovell Stewart Has Done By Far The Best Work For The Class In "Identifying or Investigating Potential Claims In This Action"**

4

In its opposition, the Milberg-Cecchi group emphasizes (1) Milberg's investigation, (2) Milberg's filing of the first complaint, *Adam Properties*, 08-cv-7232, (3) Milberg's filing of the second complaint, *Stew Leonard's*, 08-cv-7394, which is simply a **copycat** version of *Adam Properties*, and (4) the filing of the *Valley Gold* complaint, 09-cv-0387, by three firms (the Freed & Weiss, Cecchi and Seeger Weiss firm). Milberg-Cecchi Opp. pp. 2, 4-6. The *Valley Gold* complaint similarly copies the skeletal allegations of *Adams* but omits certain allegations.

        a.        **The Filing of Two Copycat Complaints Did Nothing For The Class And Adding Three Counsel On That Basis Is Detrimental To The Class**

First, the filing of copycat complaints obviously confers no benefit to the class. *See In re Cendant Corp. Sec. Litig.*, 404 F.3d 173, 181 (3d Cir. 2005) ("[T]he filing of multiple complaints each alleging the same facts and legal theories will not result in fee awards for each firm that files a complaint: such copycat complaints do not benefit the class, and are merely entrepreneurial efforts taken by firms attempting to secure lead counsel status.").

The firms that filed these copycat complaints fail even to attempt to explain how any investigative or other "work" they "have done", developed or benefited the Class' claims here. Milberg-Cecchi Opp. *passim*

        b.        **Milberg Has Failed Even To Try To Connect Up Its Investigation and Allegations To Any Benefit To The Class**

Second, the Milberg-Cecchi Opp. fails to explain how Milberg's work in the first-filed *Adam* case benefited the Class. Milberg-Cecchi Opp. at pp. 4-7 and *passim*.

Milberg does say that its "extensive investigation" for "several months" supposedly "thoroughly assessed the merits of the case" before the filing of their complaint. But "thoroughly assessing the merits" before filing says nothing about any benefit to the class. It

5

does absolve counsel of premature filing exposure under FRCP Rule 11. But this protects counsel; it does absolutely nothing for the class.

        **c.    In Stark Contrast, The Milberg-Cecchi Group Has Effectively Conceded That Lovell Stewart Has "Connected Up" Its Work To Benefit The Class**

Unlike Milberg-Cecchi, Plaintiff Indriolo has clearly explained the benefits to the class' claims of the work they have done. *E.g.*, Lovell Stewart Motion pp. 4-7. The Milberg-Cecchi Opp. has effectively conceded that, unlike Lovell Stewart, the Milberg-Cecchi group has:

    (a)    failed to "identify" or plead the best claims for Plaintiffs and the easier claims to prove: claims for an agreement in restraint of trade in violation of Section 1 of the Sherman Antitrust Act, 15 U.S.C. §1 *et seq.*;

    (b)    failed to "identify" and "investigate" facts sufficient to allege such a claim based on not just one but five agreements in restraint of trade (Indriolo Comp. ¶¶10, 29-63);

    (c)    failed to plead the percentage of the Chicago Mercantile Exchange market that Defendants owned or controlled (*Adam Properties* complaint *passim*; *Stew Leonard* complaint *passim*; *Valley Gold* complaint *passim*);

    (d)    failed to learn and allege Defendants pushed prices up so far that all other market participants bowed out of the market, and Defendants held 100% of the CME market (Indriolo Compl. ¶¶50-51);

    (e)    failed to learn and allege what Defendants should have been doing as a hedger, that Defendants traded the opposite of a hedger, and that Defendants simultaneously made thousands of contracts in violation of the speculation limits and unreasonable restraint of trade (*Id.* ¶¶9-10; 45-49);

6

(f) failed to allege direct purchaser standing through the purchase of contracts the price of which was based on the allegedly manipulated CME prices (Indriolo Comp. ¶21); see *Loeb Industries, Inc. v. Sumitomo Corp.*, 306 F.3d 469, 482-84 (7th Cir. 2002);

(g) failed to make allegations that the inflationary impact of Defendants' manipulation during 2004 continued long thereafter because such manipulation was not disclosed (Indriolo Comp. ¶¶76-78);

(h) failed to make statute of limitations tolling allegations (Indriolo Comp. at ¶¶80-81);

(i) failed to name Keller's Creamery LLP as a defendant (Indriolo Comp. ¶26);

(j) failed to affirmatively plead that DFA is not entitled to a Capper-Volstead exemption (Indriolo Comp. ¶5); and

(k) failed to allege a detailed basis for DFA's continued manipulation of prices after the summer of 2004. Indriolo Complaint ¶¶69-78.

### d. The Milberg Firm's Supposed "Extensive Investigation" Failed To Uncover The Foregoing Eleven Groups of Fact Allegations and Failed To Plead Proper Claims For The Class

Because Milberg's "extensive investigation" did not help to identify the foregoing eleven types of fact allegations, it should not help the Milberg-Cecchi group with their bid to be appointed interim class counsel.[5]

---

[5] Relatedly, the Milberg firm claims to have conducted interviews with confidential witnesses as part of its investigation into the facts here. Milberg-Cecchi Opp. p. 5. However, Milberg's allegations based on these interviews are not particularized, appear to predate the wrongdoing in this action and pale in comparison to the benefits of the particularized allegations of the Indriolo Complaint filed by Lovell Stewart.
    For example, Stew Leonard's complaint, ¶39, alleges based on information from a confidential witness that certain non-specific transactions allegedly occurred in January 1999. However, the class period in Stew Leonard's complaint begins in April 2004—five years later. Stew Leonard's complaint at ¶20. There is no attempt whatsoever in any of the three copycat complaints of the Milberg-Cecchi group to connect up this random, isolated fruit of the investigation into the claims made here.

7

      **4.**    **Rule 23(g)(1)(A)(iv)—Milberg-Cecchi's Opposition Demonstrates That The Milberg-Cecchi Group's Resources Are Geared Towards Different Types of Claims And That Lovell Stewart Has Committed The Most Resources To Representing The Types of Claims Here**

Milberg-Cecchi's opposition effectively concedes that it did not retain an economist to unravel the esoteria needed to plead proper facts here. Milberg-Cecchi Opp. *passim*. Such opposition further concedes that the Milberg-Cecchi group has not developed proprietary software to handle the enormous volumes of documents in cases of this type. *Id* at pp. 4-6. Instead, the Milberg firm apparently embarked on a multiple month investigation "utilizing its team of full-time investigators". *Id*. However, Milberg's investigation failed to uncover any facts of value to the class. See *supra*.

Therefore, Lovell Stewart has committed the resources needed for the types of claims here but the Milberg-Cecchi group has not.

    **B.**    **Implicitly Recognizing That Lovell Stewart Is The Counsel Best Able To Represent The Class Under The Mandatory Criteria, Milberg-Cecchi Primarily Points To Criteria Outside of Rule 23 Most of Which Are Contrary To The Mandatory Criteria**

      **1.**    **The Milberg-Cecchi Group's Citation To *Scrap Metal* And Attempt to Import The Clearly Inapplicable Standards of A PSLRA Lead Plaintiff Motion Further Demonstrates That Lovell Stewart Should Be Appointed**

In opposing the demonstration that Lovell Stewart is the firm best able to represent the class, the Milberg-Cecchi group argues that this Court should look past the mandatory criteria of Rule 23(g)(1)(A). Instead, this Court should supposedly focus on the Private Securities Litigation Reform Act of 1995, Pub. L. 104-67, 109 Stat. 737 (codified as amended in various sections of 15 U.S.C.) ("PSLRA").

---

Milberg's interviews have added very little, if any, value to the direct purchaser Plaintiffs' claims here. Again, Plaintiff Indriolo disagrees with and will disavow certain allegations in the Milberg complaints which may be harmful to the class.

8

The direct purchaser class in this action will be best served, in Lovell Stewart's judgment, by applying the mandatory FRCP Rule 23(g) standards rather than the clearly inapplicable PSLRA ones.

The PSLRA provides that the "presumptively most adequate lead plaintiff" in a federal securities class action is the plaintiff who "has the largest financial interest in the relief sought by the class". *Id.* The PSLRA provides that this lead plaintiff should then select class counsel with that selection to be presumptively binding on the federal court. *Id.*

However, the PSLRA only applies to federal securities law claims and this case does not involve any federal securities law claims. Second, the PSLRA approach is virtually the opposite of the approach of Rule 23(g). Like so many of the supposed "reforms" in federal law from 1995 – 2007, the PSLRA operates on the premise that the largest financial self-interest in the private sector—rather than a federal court or regulator—will best make the decisions for society.[6]

Third, FRCP Rule 23 does not mention any provision for any "lead plaintiff". Instead, FRCP Rule 23 entrusts the federal court and the rule of law (not the private corporation) to select the counsel "best able to represent the interests of the class". The PSLRA unwisely takes that decision away from this Court.

But Milberg-Cecchi heavily relies on one case, *In re Scrap Metal Antitrust Litig.*, 2002 WL 31988203 (N.D. Ohio 2002) ("*Scrap Metal*") to argue that this Court should appoint the five firms that comprise the Milberg-Cecchi group because *Scrap Metal* supposedly adopted the PSLRA standards in an antitrust case. See Milberg-Cecchi Opp. pp. 3, 6-7.

---

[6] Under this lack of regulation and lack of judicial involvement, the result (in Lovell Stewart's opinion), has been the great destruction of societal and citizens' wealth. Such result disproves the "reform" hypothesis to rely on monied interests and corporations to make the best decisions for society.

9

First, the Court in *Scrap Metal* held that the MANUAL FOR COMPLEX LITIGATION, FOURTH ("MANUAL") recommends **limiting** the number of class counsel. *Scrap Metal* at *1. Therefore, the *Scrap Metal* court rejected a proposed group and determined that that it would be best to appoint **one firm** as class counsel. *Id*. Thus, *Scrap Metal* supports the Lovell Stewart argument and rejects the Milberg-Cecchi argument regarding the number of counsel.

Second, consistent with the mandatory criteria of FRCP Rule 23(g), the *Scrap Metal* Court concluded that the "first-to-file" status emphasized by the Milberg-Cecchi group was "simply not meaningful" when making class counsel determinations. *Id*. Here again, *Scrap Metal* undercuts Milberg Cecchi's emphasis on "first to file" and supports Lovell Stewart's arguments.

Third, the Court in *Scrap Metal* determined that each of the competing three firms had similar qualifications and experience but the "edge" in antitrust experience went to the counsel it appointed under the mandatory criteria of FRCEP Rule 23(g). *Scrap Metal* at *1-2 and n. 4. Here again, *Scrap Metal* favors Lovell Stewart which has not merely an "edge" but vastly more experience "handling the types of claims asserted here".

Finally, in further contrast to *Scrap Metal*, the Milberg-Cecchi group does not cite to any evidence which would support its claim that Plaintiff Stew Leonard's has the "largest stake in this litigation". Milberg-Cecchi Opp. *passim.*

In sum, *Scrap Metal* rejects virtually all of Milberg-Cecchi's positions on this motion, and Milberg-Cecchi has failed to submit any evidence regarding the remaining point.

    **C.**    **The Milberg-Cecchi Group's Own Authorities—*Scrap Metals* And The MANUAL—Make Clear That This Is A Contested Application In Which This Court Should Appoint One Lead Counsel**

In opposing the demonstration that Lovell Stewart is best able to represent the class under the mandatory criteria of Rule 23(g)(1)(A), the Milberg-Cecchi group argues that this Court should look past the mandatory criteria. Milberg-Cecchi Opp. pp. 4, 8-10. Supposedly, this Court should focus instead on the agreement among **only** the five firms that filed the three copycat complaints in the Milberg-Cecchi group, and the supposed benefits of their "collaboration". *Id.*

First:

> As stated in prior cases, from over 35-years of practice and presiding, the undersigned is convinced that it is best to have only one law firm as class counsel. This will greatly reduce the inevitable duplication of effort that flows from two or more firms. The commentaries recognize this as well. *See, e.g., Third Circuit Task Force on the Selection of Class Counsel Final Report,* at 96 (2002) (noting that multiple counsel carry the danger of duplication of fees, and courts should scrutinize staffing arrangements and intervene by removing class counsel if in the best interests of the class). … .*In re: Merck & Co., Inc. Securities Litigation,* 432 F.3d 261, 267 n. 4 (3rd. Cir.2005) ("If plaintiffs believe that more than one law firm is necessary, they must demonstrate to the Court's satisfaction the need for multiple lead counsel").

*Castaneda v. Burger King Corp.*, No. C 08-0462 WHA, - F.R.D. - , 2009 WL 3151168 at *17 (N.D. Cal. Sept. 25, 2009).

Second, the MANUAL carefully distinguishes between a fact situation involving the "private ordering" approach and one involving the "competing counsel" approach:

> There are several methods for selecting among competing applicants….[the first approach] is the so-called "private ordering" approach: **The lawyers agree who should be lead class counsel** ….[the Court should examine whether there are agreements, side agreements, etc.]
> ****
> In the "selection from competing counsel" approach, the judge selects from **counsel who have filed actions, are unable to agree on a lead class counsel,** and are competing for appointment.

MANUAL §21.272 at 280 (emphasis supplied).

11

The fact situation here involves the "selection from competing counsel" approach. This is because the "counsel who have filed actions, are unable to agree on lead class counsel" as explicitly stated in the MANUAL's above quoted terminology. *Id*.

Therefore this is **not** a fact situation for the "private ordering approach". Rather, this is a "selection from competing counsel" situation as to which the MANUAL advises as follows:

> The lawyer best able to represent the class's interests may emerge from an examination of the factors listed in Rule 23(g)(1)([A]), as well as other factors…

MANUAL §21.272 at 280; see also Rule 23(g)(2) ("[i]f more than one adequate applicant seeks appointment, the court must appoint the applicant best able to represent the interests of the class"); *accord Scrap Metal*, 2002 WL 31988203 at *1.

Accordingly, the Milberg-Cecchi group's own authority, the MANUAL, advises this Court to revert to the mandatory criteria set forth in Rule 23(g)(1)(A).

## II. DEFENDANTS' REQUEST TO STAY DISCOVERY AND DISCLOSURE SHOULD BE REJECTED

Defendants' proposed order contains many objectionable provisions such that Plaintiffs' proposed orders should be entered instead (except for the Milberg-Cecchi proposed order which has already been found by this Court to purport prematurely to consolidate all actions for trial purposes). For example, Defendants' proposed order improperly blocks the filing of a new consolidated amended complaint. Joint Response, Defendants' (Proposed) Case Management Order No. 1, at "IV." It improperly provides for an executive committee. *Id.,* at "V." And it improperly proposes a stay of all discovery and disclosures pending resolution of a motion to dismiss. *Id.,* at "IV."

Defendants' proposed case management order provides that "[a]ll discovery, including the operation of Fed.R.Civ.P.26(a)(1), is suspended pending the resolution of such motions and

until further order of this Court." Defendants' Proposed Order, at IVB. Defendants have failed to carry their burden that such a stay is appropriate. Defendants' Joint Response, pp. 2-4.

If "the Federal Rules contemplated that a motion to dismiss under Fed.R.Civ.P. 12(b)(6) would stay discovery, they would contain such a provision."[7] Instead, the Federal Rules require Defendants to show "good cause" which they to obtain a stay. Fed.R.Civ.P. 26(c). To satisfy the "good cause" requirement of Fed.R.Civ.P. 26(c) for a stay of discovery, the movant must demonstrate "clearly defined and very serious injury." *Wilcock v. Equidev Capital L.L.C.*, 2001 WL 913957 (S.D.N.Y. 2001); *accord*, 6 MOORE'S FEDERAL PRACTICE § 26.104[1] (Matthew Bender 3d ed. 2000).[8]

Rather than undertaking such a showing, Defendants have cited *Bell Atlantic v. Twombly*, 550 U.S. 544 (2007) to argue that Plaintiffs' allegations must be plausible. Joint Response, p. 2. However, the Commodity Futures Trading Commission has made allegations against Defendants similar to those here. Defendants paid $12,000,000 to settle same. The allegations here are very likely to be found to be plausible.

Courts have repeatedly denied stays of discovery in commodity futures manipulation cases. *E.g.*, *Hershey, et al. v. Pacific Investment Mgt. Co. LLC, et al.*, 05-CV-04681 (N.D.

---

[7] *In re Chase Manhattan Corp. Sec. Litig.*, 1991 WL 79432 at *1 (S.D.N.Y. 1991) (success of anticipated motion was not "inevitable," and plaintiff in any event "may be granted the right to, and successfully, amend . . . . Should the complaint (or an amended complaint) be sustained . . . commencement of the discovery process, while no doubt imposing some burden on defendants, will advance the ultimate disposition of this action."); *Moran v. Flaherty*, 1992 WL 276913 (S.D.N.Y. 1992) (same); *In re WRT Energy Sec. Litig.*, 1996 WL 580930 at *1 (S.D.N.Y. 1996)(same)("[A] preliminary review of the complaint does not lead the Court to the conclusion that this action is a mere 'strike suit'"); *Salgado v. City of New York*, 2001 WL 88232 (S.D.N.Y. 2001)(same).

[8] Defendants do not point to any injury, let alone a "clearly defined and very serious injury," warranting a total stay of discovery pending resolution of their dispositive motions. "Broad allegations of harm, unsubstantiated by specific examples or articulated reasoning do not satisfy the Rule 26(c) test, which requires a showing that disclosure will result in a "clearly defined and very serious injury to its business." *Wilcock*, 2001 WL 913957 at *1.

Ill.)(Guzman, J.) (denying motion to stay discovery pending resolution of dismissal motions) (Minute Entry filed Aug. 22, 2006).

The Court should reject Defendants' proposed case management order, and enter Plaintiff Indriolo's proposed case management order No. 1.

## CONCLUSION

Lovell Stewart is the firm best able to represent the interests" of the Direct Purchaser class on the commodity manipulation and antitrust claims here under each and all of mandatory criterion of Rule 23(g)(1)(A).

Defendants' proposed consolidation order should be denied.

This Court should (1) grant Lovell Stewart's Motion and appoint it as interim class counsel for the Direct Purchaser class, (2) enter Lovell Stewart's [Proposed] Case Management Order No. 1 and (3) deny the competing motions.

Dated: December 11, 2009

        Respectfully submitted,

        */s/ Matthew E. Van Tine*
        Marvin A. Miller
        Matthew E. Van Tine
        **MILLER LAW LLC**
        115 South LaSalle St., Suite 2910
        Chicago, Illinois 60603
        (312) 332-3400

        *Proposed Liaison Counsel for Direct Purchaser Plaintiffs*

        */s/ Christopher Lovell*
        Christopher Lovell
        Gary Jacobson
        Ian Stoll
        Christopher McGrath
        **LOVELL STEWART HALEBIAN LLP**

61 Broadway, Suite 501
New York, NY 10006
(212) 608-1900

*Attorneys for Plaintiff Indriolo Distributors, Inc. and Proposed Interim Class Counsel for Direct Purchaser Plaintiffs*

**CERTIFICATE OF SERVICE BY ELECTRONIC MEANS**

      I, Matthew E. Van Tine, one of the attorneys for plaintiff Indriolo Distributors, Inc., hereby certify that on December 11, 2009, service of the foregoing document was accomplished pursuant to ECF as to Filing Users and I shall comply with LR 5.5 as to any party who is not a Filing User or represented by a Filing User.

                                                 */s/   Matthew E. Van Tine*
                                                     Matthew E. Van Tine