IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| IN RE: DAIRY FARMERS OF AMERICA, INC.<br>CHEESE ANTITRUST LITIGATION<br><br>THIS DOCUMENT RELATES TO:<br><br>DIRECT PURCHASER ACTION | Master File No. 09-cv-03690<br>MDL No. 2031<br>The Honorable Robert M. Dow Jr. |

**WOLF HALDENSTEIN ADLER FREEMAN & HERZ LLC'S CORRECTED
RESPONSE IN OPPOSITION TO MARY JANE FAIT'S
<u>MOTION FOR SUBSTITUTION OF CO-LEAD COUNSEL</u>**

Now comes Wolf Haldenstein Adler Freeman & Herz LLC, ("Wolf Haldenstein"), one of the Court-appointed interim co-lead counsel for direct purchaser plaintiffs in this consolidated case (the "DFA Action"), and for its corrected response to Plaintiffs' Motion to Substitute One of Co-lead Counsel (Dkt. No. 372) ("Substitution Motion"), Wolf Haldenstein respectfully states as follows:

<u>**INTRODUCTION**</u>

On February 5, 2010, Judge Hibbler appointed Wolf Haldenstein and Lovell Stewart Halebian Jacobson LLP ("Lovell Stewart") to serve as interim co-lead counsel for the direct purchaser plaintiffs. (Dkt No. 61).[1] Now, over three years later, Mary Jane Fait, a former member in Wolf Haldenstein, who is currently a sole practitioner living and practicing out of Seattle, Washington, is seeking to modify the Order appointing co-lead counsel to (a) name her individually as co-lead counsel with Lovell Stewart, and (b) to withdraw Wolf Haldenstein as one of the two direct purchaser Co-Lead Counsel in this case.

---

[1] That Order also vested Wolf Haldenstein with the responsibility of Liaison Counsel.

As will be discussed in further detail below, not only has Ms. Fait failed to establish any good cause to withdraw Wolf Haldenstein as co-lead counsel, there is much that is inaccurate, misleading and outright erroneous with Ms. Fait's Substitution Motion. One example can be found in its title, which refers to "plaintiffs" and implies that all named plaintiffs brought the Substitution Motion. That is not the case. Of the three currently named direct purchaser plaintiffs, Knutson's, Inc., Indriolo Distributors, Inc. and Valley Gold, LLC, *only one*, Knutson's, Inc., supports Ms. Fait's motion to overturn this Court's appointment and organization of interim co-lead counsel. No other plaintiff has submitted any papers supporting Ms. Fait. Each is satisfied with the present organization and none has indicated any desire that there be any change, but each has determined not to take a position in what is viewed as an internecine fight.

It should also be noted that the present Court-appointed organization of counsel has achieved a substantial proposed settlement on behalf of "plaintiffs" and the Class, advanced the litigation against the non-settling defendant, and has appeared before this Court numerous times. Indeed, as will be explained below, Ms. Fait's role in the case has been limited.

## BACKGROUND

Wolf Haldenstein commenced an action on April 3, 2009, in the Northern District of Illinois. Wolf Haldenstein is an Illinois LLC. The members of the LLC consist of the Equity Partners of Wolf Haldenstein Adler Freeman & Herz LLP (The "LLP") a New York law firm (together the "Wolf Law Firms"). Until August 20, 2013, Ms. Fait was both a partner and member in the Wolf Law Firms.

Ms. Fait joined the Wolf Law Firms in 2000 to augment Wolf Haldenstein's existing antitrust practice under the general direction of a senior partner, Fred Taylor Isquith. At that

2

time, Wolf Haldenstein already had one Chicago member. Simultaneous with Ms. Fait joining the Wolf Firms she was joined by a third attorney in Chicago.[2]

The Wolf Law Firms do not permit any legal action to be instituted without review and approval by at least two partners. All legal work and all clients are Firm matters and clients, regardless of who originates the legal work. Staffing is decided in New York and allocated to attorneys among the three national offices. In the case of the DFA Action, prior to its filing the background and allegations were carefully reviewed by Mr. Isquith and the head of the Litigation Department, Daniel W. Krasner. Both the initial pre-consolidated complaint and the Corrected Consolidated Class Action Complaint listed the names of both Ms. Fait and Mr. Isquith as counsel. (*See* Dkt. No. 4-2 and Dkt. No. 86 at p. 53). In short, Ms. Fait's assertion that "I filed the class action complaint in this District on behalf of my own client" (Mot. at p. 1) is misleading.

Mr. Isquith, in fact, promptly became involved in the litigation because of his significantly greater familiarity with the other lawyers and firms who had filed related cases. As a result of considerable discussion, an application was made to the Court to appoint Wolf Haldenstein as lead counsel or as co-lead counsel with the Lovell Stewart firm. (*See* Knutson's, Inc.'s Memorandum in Response to Motions for Consolidation of Direct Purchaser Actions and Appointment of Interim Class Counsel, Dkt. No. 37). Mr. Isquith was instrumental in drafting supporting papers regarding the motion for an appointment of Wolf Haldenstein as co-lead counsel.[3]

---

[2] Ms. Fait is in error in her history: the Chicago offices had been opened more than a year before her arrival. The Firm had an antitrust practice. As the senior attorney in Chicago she was given the title of "Managing Partner" (an administrative role). She did not have authority over the Firms' antitrust cases many of which were headed by other partners.

[3] Ms. Fait has commented on, but has never authored any of the briefs or discovery materials in this litigation.

3

Wolf Haldenstein's motion papers highlighted the experience of Ms. Fait, Mr. Isquith and the Law Firms in the antitrust area. (*See* Knutson's, Inc.'s Memorandum in Support of Its Motion for Consolidation of Direct Purchaser Actions and Appointment of Wolf Haldenstein Adler Freeman & Herz, LLC As Interim Class Lead Counsel, Dkt. No. 25 at pp. 4-8; a*lso see* Knutson's, Inc.'s Memorandum in Response to Motions for Consolidation of Direct Purchaser Actions and Appointment of Interim Class Counsel, Dkt. No. 37 at pp. 3-4). The motion was contested by other firms. The Court appointed the law firms Wolf Haldenstein and Lovell Stewart as co-lead counsel.[4] The Court rejected the request for the appointment of the Miller Law LLC as liaison counsel as superfluous given the presence of Wolf Haldenstein in Chicago. *See* Dkt. No. 63, Minute Entry of Feb. 11, 2010 ("Because Wolf Haldenstein is local, the Court sees no need to appoint liaison counsel for the directs.").

Wolf Haldenstein decided that one of its Chicago-based attorneys, Theodore Bell, would have primary day-to-day responsibility for the case. Mr. Bell is a Member of Wolf Haldenstein and has been involved in this case since its inception. Mr. Isquith was the direct contact point with Mr. Lovell and his law firm, because of his experience, and his close prior working relationship with Mr. Lovell. Ms. Fait, for several reasons, including her attention to other matters, largely served as a senior attorney for Mr. Bell to consult.

Indeed, through her resignation from Wolf Haldenstein, the time the most active attorneys in the Wolf Law Firms have devoted to the case is set forth below. The total time for the Wolf Law Firms is 6035 hours:

|  |  |  |
|---|---|---|
| Mr. Bell | 2122 | (35%) |
| Ms. Fait | 793 | (13%) |
| Mr. Isquith | 749 | (12.4%) |

---

[4] Ms. Fait was not proposed as a co-lead, nor was she appointed to that position. Nor is it a fact that Ms. Fait's credentials alone were provided to the Court.

Three other attorneys have contributed 926 hours (15.3%).[5]

Because of his availability and location in Chicago, it is Mr. Bell who has worked most closely with Lovell Stewart in filing briefs and motions and conducting discovery. Mr. Bell also helped prepare for and was involved in the settlement negotiations. Mr. Isquith, however, was the lawyer at Wolf Haldenstein who had the most involvement in the settlement discussions.[6]

In January 2013, the Wolf Law Firms learned, among other things, for the first time that Ms. Fait had filed in the Northern District of Illinois for personal protection under the Bankruptcy laws in April 2012.[7] In or about the first week of July 2013, Ms. Fait advised the Wolf Law Firms that at the end of the month she was moving to Seattle to be with her fiancée, and would be practicing from the State of Washington. She advised the Wolf Law Firms that she wanted nothing to change – including her "management" of the Chicago office. Accommodating this hope was clearly impracticable. Ms. Fait and her Firm had a falling out concerning the management of the cases she worked on, which culminated in her resignation of August 20, 2013.

On August 20, 2013, Ms. Fait advised the Law Firms that she was resigning effective immediately (The Partnership Agreement provides for a 90-day Notice Period). One day later, on August 21, 2013, Knutson's Inc., advised Wolf Haldenstein that it was discontinuing its representation by Wolf Haldenstein and wished to be represented by Ms. Fait.

---

[5] In addition, Wolf Haldenstein has had out of pocket expenses of $165,797.

[6] Thus, the statements by Ms. Fait concerning her crucial and essential involvement are overstated and belied by the facts. Ms. Fait was not even present at one face-to-face session.

[7] This filing and proceeding in the Bankruptcy Court are matters of public records. Should the Court wish for the details, a hearing *in camera* is suggested, as there are matters directly concerning Ms. Fait's compliance with the directives of the Bankruptcy trustee which impacted Firm finances. Although Ms. Fait has given vague assurances that she has staffing and financial resources to practice and take primary financial responsibility in major antitrust class actions, she has not provided any evidence that those resources exist or their source, or sources.

In September 2013, Ms. Fait advised Wolf Haldenstein that she had secured an "office" at the offices of Miller Law LLC in Chicago, a five-lawyer firm under the sole ownership and management of Mr. Miller. Mr. Miller has been a Chicago co-counsel during many years with the Wolf Law Firms, Lovell Stewart, and many other law firms involved in plaintiffs' work. Ms. Fait, however, is a resident of Seattle, Washington, from where she works from an office in her home. On information and belief, Ms. Fait's arrangement with Mr. Miller allows her to use his office as a convenience address and a place to work from on those occasions when she comes to Chicago.

## THE SUBSTITUTION MOTION HAS NO SUPPORT

Ms. Fait's motion seeks to substitute herself individually for her former law firms as co-lead counsel. Ms. Fait provides no basis for her motion other than that one of the plaintiffs prefers to substitute its personal counsel for Wolf Haldenstein. Nor does Ms. Fait provide any evidence as required by Rule 23(g) that she has the resources to be a class counsel. No legal authority is cited. No other plaintiff supports the application.

A motion to be appointed as a co-lead and 'interim class counsel' under Rule 23(g) must be supported by <u>evidence</u> of each of the elements required, including "the resources counsel will commit to representing the Class." Ms. Fait does not make this showing.

It is not enough for a proposed class counsel to demonstrate her competence in her chosen field of concentration, antitrust, which is not disputed. The Court must also make a determination, on sufficient evidence, of sufficient resources to carry forward the case. Ms. Fait has only this year, however, had her personal resources liquidated in the bankruptcy proceedings and rectified certain disputes with the Trustee and the Firm in those proceedings. She provides no evidence of the resources to expend hundreds of thousands of dollars in the prosecution of

6

this case. Nor does she state what legal resources – lawyers, paralegals and staff – she has at her disposal. These factors are particularly important given that the Wolf Law Firms have so far provided over 6,000 hours of work, and expended approximately $166,000. That work continues. Twenty-two lawyers and paraprofessionals have worked on the case, some with very significant hours. Ms. Fait's individual time was 13% of the total. Unsupported and unparticularized reassurances of financial and staffing resources are not sufficient, particularly when there is evidence to the contrary.

Ms. Fait stated at the hearing on October 3, 2013, that the "primary consideration" is "to represent the class fairly and as efficiently as possible." (*See* Oct. 3, 2013 Hr'g. Tr. at 7:23-25, attached hereto as Exhibit A). In this we all agree. Ms. Fait's differences with the Firm were, actually, related to matters of internal Firm management regarding the supervision of Firm matters. Her characterizations here, as with others, are inaccurate. However, we think that there is no purpose in involving this Court in the detailed circumstances of Ms. Fait's withdrawal from the Firm.

As noted above, Ms. Fait does not cite any legal authority in support of her motion. While we have not found a case on all fours with the situation before this Court, class jurisprudence allows the Courts to continue with Court appointed co-lead counsel where personal clients disapprove or even reject appointed counsel (as here).

Indeed, when evaluating a motion to replace or substitute counsel representing a class, courts have stated that they can "not allow decisions on behalf of the class to rest exclusively with the named plaintiffs." *Maywalt v. Parker & Parsely Petroleum Co.*, 67 F. 3d 1072, 1078 (2d Cir. 1995); *see also Banyai v. Mazur*, 2004 U. S. Dist. LEXIS 17572, at *3-4 (S.D.N.Y. 2004) (In *Maywalt* the class had been certified; here there is a proposed settlement class with co-

7

leads representing that class as agreed to by Ms. Fait.) The authority to appoint or to discharge Class Counsel rests with the Court, not with the named representatives. *Banyai*, at *5-6. Indeed the Third Circuit Task Force Report on Selection of Class Counsel, 74 Temp. L. Rev. 689, 696 (2001) reminds that the "goal of all procedures surrounding the appointment of class counsel is to establish appropriate structures and monitoring mechanisms to substitute for the ordinary attorney-client relationship and to assure performance of the fiduciary responsibilities owed by both the lawyer and the lead plaintiff to the class." In *Maywalt*, the court observed that counsel should not be replaced as the plaintiff "failed to prove that Class Counsel had engaged in any improper conduct or…undermined the rights of the class…" *Maywalt,* 67 F. 3d 1078.

While Ms. Fait refers to two recent orders from other cases pending in this District relating to case concerns involving the transition occasioned by Ms. Fait's resignation, those decisions have little bearing on this case.

In *In re Text Messaging Antitrust Litigation,* (No. 08 C 7082, MDL No. 1997) Judge Kennelly granted the motion of Wolf Haldenstein to confirm its position in the leadership of the case – as here. The facts, in brief, are as follows:

The *Text Messaging Antitrust Litigation* is major antitrust litigation. By appointment of the Court, Wolf Haldenstein and 12 other law firms were constituted as a Plaintiffs' Steering Committee ("PSC") to run the case. Ms. Fait was Wolf Haldenstein's selected attorney on the Steering Committee. After Ms. Fait resigned from Wolf Haldenstein she took the position that the appointment to the PSC was strictly a personal appointment as opposed to a firm appointment and that she, and not Wolf Haldenstein, should be on the PSC. Wolf Haldenstein applied to the Court to make clear that Wolf Haldenstein was the appointed member of the PSC and with Ms. Fait's resignation Mr. Isquith should serve as Wolf Haldenstein's representative.

The other Members of the PSC supported the full participation of Mr. Isquith on the PSC as Wolf Haldenstein's representative. In addition, Wolf Haldenstein advised the Court that Ms. Fait should be appointed to the PSC because of her institutional knowledge.[8]

Judge Kennelly agreed with Wolf Haldenstein's position that it was the Court's appointed representative and that the Court had not made personal appointments. He explicitly allowed Mr. Isquith to be named. He did not initially accept the stipulation, however, as to Ms. Fait. He required Ms. Fait to submit additional papers – *which were unopposed.* Thus, the Court reaffirmed Ms. Fait's participation on the PSC. (*See* Exhibit B hereto, *In re Text Messaging Antitrust Litigation*, Case. No. 08 CV 07082, Dkt. No. 729 Minute Entry of Aug. 27, 2013; *also see* Exhibit C hereto, *In re Text Messaging Antitrust Litigation*, Case. No. 08 CV 07082, Dkt. No. 731 Minute Entry of Sept. 11, 2013).

It should be noted that it is the PSC, including the Wolf Haldenstein Firm, which has collective financial responsibility for the lawsuit. Certain members of the PSC have indicated that they would cover Ms. Fait's financial obligations.

*In re Evanston Northwestern Healthcare Corporation Antitrust Litigation* (No. 07 CV 4446), is an antitrust case involving the merger of several hospitals in the Chicago area. The Court had previously ruled that the Court wanted individual attorneys to be "interim class counsel." Ms. Fait, of Wolf Haldenstein, was one of those appointees. When Ms. Fait resigned, <u>*all*</u> named plaintiffs stated that Ms. Fait and the co-counsel should remain in their positions. Wolf Haldenstein advised the Court that it would <u>not</u> contest the Court's stated wish for personal representation or the desires of all plaintiffs.

---

[8] As here, Wolf Haldenstein does not have a personal client in the *Text Messaging* case. Wolf Haldenstein, and the PSC, made no application with regard to Liaison Counsel, a position to which Wolf Haldenstein was appointed.

Clearly, this case is different. Here, the law supports the denial of the Substitution Motion.

In addition, since its appointment as co-lead counsel Wolf Haldenstein along with Lovell Stewart has represented all three named plaintiffs and the class. The consolidated complaint lists both Ms. Fait and Mr. Isquith of Wolf Haldenstein as co-lead on behalf of all named plaintiffs. No plaintiff, other than Ms. Fait's personal client, supports her motion.

Ms. Fait states that the Lovell Stewart firm, which represents Indriolo Distributors, Inc., "takes no position." (Mot. at p. 3) Indeed, Lovell Stewart, in fact, does not advocate any change in organization. It is satisfied with the organization which has had success in this litigation. It has neither joined (nor opposed) Ms. Fait's motion.

Mr. Isquith has also consulted with Jeff Leon of the Complex Litigation Group, LLC who represents named Plaintiff Valley Gold, LLC. Mr. Leon has advised that his firm is not taking a position on the motion. Valley Gold has not joined Ms Fait's motion.

## NEED FOR CHICAGO COUNSEL

In addition to appointing Wolf Haldenstein co-lead, Judge Hibbler entrusted Wolf Haldenstein with the responsibility of Liaison Counsel.

The Court appointed Wolf Haldenstein and Lovell Stewart as co-lead counsel and declined to appoint the Miller Law LLC as Liaison Counsel. The reason was to avoid duplication (and three firms when two were sufficient). The Court indicated that as Wolf Haldenstein was local to Chicago, it could, in addition to acting as co-lead counsel, also handle the responsibilities of Liaison Counsel in the Northern District.[9] *See* Dkt. No. 63, Minute Entry

---

[9] Ms. Fait states that she wishes "no duplication of work" yet at the hearing on October 3, 2013, she was accompanied by Mr. Miller, whose business address she uses. Mr. Miller has had no role in the case since its organization.

10

of Feb. 11, 2010 ("Because Wolf Haldenstein is local, the Court sees no need to appoint liaison counsel for the directs.").

If Ms. Fait were to be appointed co-lead she could not also serve as Liaison Counsel given that she now resides on the West Coast. Mr. Bell has essentially served in that role for Wolf Haldenstein for the past three years. Removing Wolf Haldenstein as co-lead counsel would needlessly require the appointment of a third firm to the leadership to serve as Liaison Counsel as neither Ms. Fait nor Lovell Stewart are local to Chicago. At the hearing on October 3, 2013, Mr. McGrath, a partner at Lovell Stewart, made it clear that Lovell Stewart opposes the appointment of a third firm. Mr. McGrath stated, "We don't take a position as between Wolf Haldenstein or Ms. Fait, but we would oppose the appointment of a third lead counsel on the case." (*See* Oct. 3, 2013 Hr'g. Tr. at 9:23-25, attached hereto as Exhibit A).

Surely, Ms. Fait in Seattle cannot, and should not, travel 1700 miles each way to attend routine status conferences and handle other Liaison responsibilities. Wolf Haldenstein, as co-lead counsel has fully satisfied the responsibilities of local liaison counsel as directed by Judge Hibbler and can obviously continue to do so. Lovell Stewart explicitly urged the Court not to accept a third firm. The implications of the Lovell Stewart's statements are clear.

## **CONCLUSION**

All counsel are unanimous that the case be prosecuted by those best situated to represent the best interests of the class. Rule 23(g) requires that counsel have the resources to do so – staff as well as financial. Wolf Haldenstein has those resources as well as offices one block from the Courthouse. While no counsel – including Wolf Haldenstein – advocates that Ms. Fait not continue to work on the case, it is also true that no other plaintiffs have joined in her motion. We

11

respectfully request that the Substitution Motion be denied, especially with respect to the requested withdrawal of Wolf Haldenstein as co-lead counsel.

WHEREFORE, Wolf Haldenstein respectfully requests that the Court deny Ms. Fait's Motion to Substitute Counsel and allow Wolf Haldenstein to continue as co-lead counsel in this matter.

Dated: October 18, 2013                                     Respectfully submitted,

                                                             /s/ Fred T. Isquith
                                                            Fred T. Isquith
                                                            **WOLF HALDENSTEIN ADLER**
                                                              **FREEMAN & HERZ LLP**
                                                            270 Madison Ave.
                                                            New York, NY 10016
                                                            Chicago, Illinois 60603
                                                            Telephone: (212) 545-4600
                                                            Facsimile: (212) 686-0114

                                                            Theodore B. Bell
                                                            **WOLF HALDENSTEIN ADLER**
                                                              **FREEMAN & HERZ LLC**
                                                            55 W. Monroe Street, Suite 1111
                                                            Chicago, Illinois 60603
                                                            Telephone: (312) 984-0000
                                                            Facsimile: (312) 984-0001

    `                                                       *One of Plaintiffs' Co-Lead Counsel*

**CERTIFICATE OF SERVICE**

**I HEREBY CERTIFY** that on this 18th day of October, 2013, a copy of the foregoing *Wolf Haldenstein Adler Freeman & Herz LLC's Response in Opposition to Mary Jane Fait's Motion for Substitution of Co-Lead Counsel* was served by causing a true and correct copy of the same to be delivered to all Filing Users through the Court's ECF System and to the below-listed counsel via U.S. mail.

Paul W. Rebein
Rebein Law Firm PA
1201 N. Clearview Avenue
Tampa, FL  33607

/s/ Theodore B. Bell
Theodore B. Bell