**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| IN RE: DAIRY FARMERS OF AMERICA, INC. | ) | |
| CHEESE ANTITRUST LITIGATION | ) | Master File No. 09 CV 3690 |
| | ) | MDL No. 2031 |
| | ) | |
| THIS DOCUMENT RELATES TO: | ) | Judge Robert M. Dow, Jr. |
| | ) | |
| Direct Purchaser Actions | ) | |

<u>**MEMORANDUM OPINION AND ORDER**</u>

This matter is before the Court on a motion, filed by Mary Jane Fait as counsel for Plaintiff Knutson's, Inc., to modify the appointment of co-lead counsel in this matter [372]. Also pending before the Court is Wolf Haldenstein Adler Freeman & Herz, LLC's ("Wolf Haldenstein") motion for leave to file a sur-reply to Mary Jane Fait's reply in support of her motion to substitute [393]. In short, Wolf Haldenstein and its former partner, Ms. Fait, have parted ways and both seek to remain as co-lead counsel, along with Lovell Stewart & Halebian LLP ("Lovell Stewart"), for Direct Purchaser Plaintiffs.

For the reasons set forth below, the Court grants in part and denies in part the motion to modify the appointment of one of the co-lead counsel in this matter [372], modifies Judge Hibbler's February 2010 orders [61, 63], and appoints Lovell Stewart & Halebian LLP as sole lead counsel for Direct Purchaser Plaintiffs pursuant to Federal Rule of Civil Procedure 23(g)(3). Given Wolf Haldenstein's presence in Chicago and considerable involvement in the case to date, Wolf Haldenstein shall remain as local counsel for Direct Purchaser Plaintiffs if it is willing to accept that role. The Court denies Wolf Haldenstein's motion for leave to file a sur-reply to Mary Jane Fait's reply in support of her motion to substitute [393], as Wolf Haldenstein's and Ms. Fait's additional briefing was unnecessary to the disposition of the motion to modify the

appointment of lead counsel in that it offered very little in regard to the core issue before the Court—namely, what leadership structure among counsel is in the best interests of the Direct Purchaser Plaintiff class.

## I.     Background

This MDL action was reassigned from Judge Hibbler's docket to this Court's docket on April 30, 2012.

### A.     Procedural and Factual History for Direct Purchaser Actions

The direct purchaser cases have been consolidated for pre-trial proceedings on this docket.   Direct Purchaser Plaintiffs' amended corrected consolidated class action complaint ("initial complaint") alleged that Defendants violated Sections 1 and 2 of the Sherman Act (Counts 1-3), violated the Commodity Exchange Act ("CEA"), 7 U.S.C. §1 et seq, (Count 4), were unjustly enriched at Plaintiffs' expense (Count 5), and violated the Racketeer Influenced and Corrupt Organizations Act ("RICO") (Count 6).   The named Plaintiffs in that complaint were Indriolo Distributors, Inc., Knutson's, Inc. and Valley Gold, LLC, and Defendants were (a) Dairy Farmers of America, Inc. ("DFA"), (b) Gary Hanman, (c) Gerald Bos, (d)  Keller's Creamery, LP,  (e) Keller's Creamery, L.L.C., (f) Keller's Creamery Management, LLP, (g) Frank Otis, and (h) Glenn Millar (the "DFA Defendants").   The DFA Defendants collectively filed motions to dismiss, which Judge Hibbler denied in part and granted in part.   All parties named in the initial complaint have reached a settlement in principle and are in the process of seeking preliminary approval of settlement.

On March 22, 2012, Plaintiffs filed a second amended class action complaint, which added Schreiber Cheese, Inc. ("Schreiber") as a named Defendant and added a Cartwright Act

claim under California law. Schreiber moved to dismiss the second amended class action complaint, which the Court granted in part and denied in part.[1]

### B. Procedural and Factual History Pertaining to Motion to Modify Counsel

On February 5, 2010, Judge Hibbler appointed Wolf Haldenstein and Lovell Stewart to serve as interim co-lead counsel for the Direct Purchaser Plaintiffs. Mary Jane Fait, a former member of Wolf Haldenstein, who currently is a sole practitioner living and practicing out of Seattle, Washington, is seeking to modify the order appointing co-lead counsel to (a) name her individually as co-lead counsel with Lovell Stewart, and (b) to withdraw Wolf Haldenstein as one of the two Direct Purchaser co-lead counsel in this case. Of the three currently-named Direct Purchaser Plaintiffs, Knutson's, Inc., Indriolo Distributors, Inc. and Valley Gold, LLC, one—Knutson's, Inc.—supports Ms. Fait's motion to overturn this Court's appointment and organization of interim co-lead counsel. The remaining Direct Purchaser Plaintiffs and Lovell Stewart have not taken a position in what appears largely to be an internecine fight.

Wolf Haldenstein commenced an action on April 3, 2009, in the Northern District of Illinois.[2] Wolf Haldenstein is an Illinois LLC. The members of the LLC consist of the equity partners of Wolf Haldenstein Adler Freeman & Herz LLP (The "LLP"), a New York law firm. Until August 20, 2013, Ms. Fait was both a partner and member of Wolf Haldenstein. Ms. Fait joined the firm in 2000; at that time, Wolf Haldenstein had one Chicago member. Simultaneous with Ms. Fait joining the Wolf Haldenstein, she was joined by a third attorney in Chicago.

---

[1] Judge Hibbler's memorandum opinion and order of February 4, 2011, and this Court's memorandum opinion and order of January 18, 2013, set forth a detailed factual history, which the Court adopts and incorporates in this opinion.

[2] The Wolf Haldenstein complaint was the last direct purchaser complaint filed in this district. Prior to its filing, there were four prior cases with eight other law firms representing Direct Purchaser Plaintiffs. The first of those was filed four months before the Wolf Haldenstein complaint, and the complaint filed by Lovell Stewart (co-lead counsel) preceded the Wolf Haldenstein complaint by almost a month.

Both the initial pre-consolidated complaint and the consolidated class action complaint list the names of Ms. Fait and another Wolf Haldenstein partner, Fred Isquith, as counsel. Following the filing of the action, an application was made to the Court to appoint Wolf Haldenstein as lead counsel or as co-lead counsel with the Lovell Stewart firm. The motion was contested by other firms, but ultimately granted. The Court rejected the request for the appointment of Miller Law LLC as liaison counsel, deeming the appointment of liaison counsel superfluous given the presence of Wolf Haldenstein in Chicago. See Dkt. No. 63, Minute Entry of Feb. 11, 2010 ("Because Wolf Haldenstein is local, the Court sees no need to appoint liaison counsel for the directs."). Judge Hibbler's February 11, 2010 order [63] also noted that the order appointing co-lead counsel would "be reviewed annually or sooner if any party files a motion seeking change for cause." The order also noted Judge Hibbler's view that "[t]he Court does not at this time perceive a need for a[n] Executive or Coordinating Committee" and his invitation for co-lead counsel to request the appointment of such a committee if they felt a need to do so.

One of Wolf Haldenstein's Chicago-based attorneys, Theodore Bell, had primary, day-to-day responsibility for Wolf Haldenstein's involvement in the case. Because of his availability and location in Chicago, Mr. Bell worked most closely with Lovell Stewart in filing briefs and motions and conducting discovery. Mr. Bell also helped prepare for and was involved in the settlement negotiations. Ms. Fait served as a senior attorney for Mr. Bell to consult and appeared before this Court many times; Mr. Isquith was the primary contact point with Mr. Lovell and his law firm. Through the date of Ms. Fait's resignation from Wolf Haldenstein, the time that the most active attorneys at Wolf Haldenstein had devoted to the case was as follows: Mr. Bell 2,122 hours (35%); Ms. Fait 793 (13%); and Mr. Isquith 749 (12.4%). Three other attorneys have contributed 926 hours (15.3%). The total time billed by Wolf Haldenstein is 6,035 hours.

In addition, Wolf Haldenstein has contributed out-of-pocket expenses in excess of $165,797.00. The firm's records thus reflect substantial contributions in terms of time and money from the Wolf Haldenstein firm. Yet neither Ms. Fait nor Wolf Haldenstein has contradicted the statement in Lovell Stewart's submission [391, at 2-3 n.1] that "Lovell Stewart, for efficiency purposes in this case, has done the majority of the work," including with respect to "the proposed settlement with the Dairy Farmers of America, Inc. ("DFA") defendants, and the majority of the work against Defendant Schreiber Foods, Inc." as well.

The events leading up to Ms. Fait's resignation from Wolf Haldenstein appear to be complex and disputed. The Court need not delve into them deeply to resolve the representation issues raised in the instant motion. Suffice to say that one major source of contention between Fait and the firm centered on Ms. Fait's personal bankruptcy case, which she commenced in April 2012 and about which the firm first became aware in January 2013. Notwithstanding the bankruptcy proceedings, Ms. Fait has given assurances that she has the staffing and financial resources to take primary financial responsibility for major antitrust class actions. However, she has not provided any concrete evidence—such as names of staff or sources of income—that those resources exist.

In or about the first week of July 2013, Ms. Fait advised Wolf Haldenstein that at the end of the month she was moving to Seattle and would be practicing from the State of Washington. She advised the firm that she wanted nothing to change—including her "management" of the Chicago office—and that she remained committed to her cases and would operate from the Chicago office when necessary. Shortly thereafter, Ms. Fait and the firm had a final falling out concerning the management of the cases she worked on, and on August 20, 2013, Ms. Fait

advised the firm that she was resigning effective immediately.[3]   One day later, on August 21,

2013, Knutson's Inc. advised Wolf Haldenstein that it was terminating its representation by Wolf

Haldenstein and wished to be represented by Ms. Fait.   In September 2013, Ms. Fait advised

Wolf Haldenstein that she had secured space at the offices of Miller Law LLC in Chicago.

As previously indicated, Lovell Stewart takes no position regarding the request for the

modification of the name of co-lead counsel, so long as there is no duplication of work.  And at

least Lovell Stewart and Ms. Fait are in agreement that the appointment of three co-lead counsel

would not be advisable.

## II.    Legal Standard

In selecting interim class counsel, courts look to the standard articulated in Rule 23(g)(2),

which requires appointment of counsel "best able to represent the interests of the class."  Fed. R.

Civ. P. 23(g)(2).   This standard requires the Court to consider the factors under Rule 23(g)(1)

and (4), including counsel's investigation of the potential claims, experience in relevant matters,

knowledge of applicable law, resources to commit, and any other factors relevant to counsel's

ability to fairly and adequately represent the interests of the class.  Fed. R. Civ. P. 23(g)(1)(A).

When evaluating a motion to replace or substitute counsel representing a class, courts have stated

that they can "not allow decisions on behalf of the class to rest exclusively with the named

plaintiffs."  *Maywalt v. Parker & Parsely Petroleum Co.*, 67 F. 3d 1072, 1078 (2d Cir. 1995).

Thus, even if all of the named Plaintiffs shared Plaintiff Knutson's preference that Ms. Fait serve

as co-lead counsel – and there is no indication that they do – those preferences would not be

dispositive.

---

[3]  The Wolf Haldenstein partnership agreement provides for a 90-day notice period.

### III.   Analysis

Pointing to her extensive antitrust and class action experience, Ms. Fait requests that the Court modify Judge Hibbler's order appointing interim co-lead counsel to name her as co-lead counsel with Lovell Stewart and to withdraw the appointment of Wolf Haldenstein to that role. A motion to be appointed as a co-lead and 'interim class counsel' under Rule 23(g) must be supported by evidence of each of the elements required, including "the resources counsel will commit to representing the Class."  Having parted ways with one of the two law firms that the prior judge appointed as interim co-lead counsel, it is not enough for Ms. Fait to demonstrate her competence and experience with complex class actions and antitrust law, which are not disputed. As set forth below, Ms. Fait's current location and resources, the stage of the proceedings in this action, the palpable distrust between Wolf Haldenstein and Ms. Fait, efficiency considerations, and the existence of experienced and competent counsel—who have to date taken the laboring oar in this matter—compel the Court to modify Judge Hibbler's order such that the case will now proceed with Lovell Stewart as sole lead counsel.

The Court stresses that its decision should not be viewed as denigrating the substantial contributions that both Ms. Fait and the Wolf Haldenstein firm appear to have made in representing their clients in this matter.  As the Court observed at recent status conferences, Ms. Fait has been an articulate spokesperson for Direct Purchaser Plaintiffs in court and possesses considerable experience and legal acumen in cases of this nature.  And, as noted above, the other lawyers at Wolf Haldenstein and the firm as a whole have contributed literally thousands of hours and more than a hundred thousand dollars in financial contributions to the case overhead to date.  Yet, as explained in greater detail below, neither Ms. Fait nor Wolf Haldenstein standing alone possesses the complete package of expertise, resources, and location to justify continued

appointment as co-lead counsel – especially where, as here, (1) co-lead counsel at the Lovell Stewart firm has taken and remains ready, willing, and able to continue taking the laboring oar on both the settlement and litigation fronts, (2) a less prominent though still significant role as local counsel is available to Wolf Haldenstein, and (3) Ms. Fait (and other interested lawyers on the Direct Purchaser Plaintiff side of the case) may continue to provide input and expertise to Lovell Stewart.

Turning first to Ms. Fait, in the past year her personal resources have been liquidated in bankruptcy proceedings and she has attended to certain disputes with the Trustee and Wolf Haldenstein in those proceedings. She also has departed a sizeable firm with demonstrated resources, moved to Seattle, and opened a home office. She provides no evidence of the resources to expend potentially hundreds of thousands of dollars in the litigation of this case. Nor does she state what legal resources—such as lawyers, paralegals and staff—she has enlisted since leaving Wolf Haldenstein and which would be at her disposal. In short, Ms. Fait has fallen far short of demonstrating that she has sufficient resources to carry this complex, antitrust class action forward in the demanding role of co-lead counsel.

In support of her motion, Ms. Fait refers to two recent orders from other cases pending in this district in which the presiding judges have retained Ms. Fait in a leadership role notwithstanding the transition occasioned by Ms. Fait's resignation from Wolf Haldenstein and relocation to Seattle. The Court has carefully examined the circumstances and rulings in those cases and concludes that each of the three cases is sufficiently different and unique that any decision regarding lead counsel in one case does little to inform the proper ruling in any other.

In *In re Text Messaging Antitrust Litigation* (No. 08 C 7082, MDL No. 1997), Judge Kennelly appointed Wolf Haldenstein and 12 other law firms as a plaintiff's steering committee

to run the case. Ms. Fait was Wolf Haldenstein's selected attorney on the steering committee. After Ms. Fait resigned from Wolf Haldenstein, she took the position that the appointment to the steering committee was strictly a personal appointment as opposed to a firm appointment and that she, and not Wolf Haldenstein, should be on the committee. Wolf Haldenstein applied to the Court to make clear that Wolf Haldenstein was the appointed member of the committee and that with Ms. Fait's resignation, Mr. Isquith should serve as Wolf Haldenstein's representative. After explaining that Wolf Haldenstein was the Court's appointed representative and that the court had not made personal appointments, Judge Kennelly allowed Mr. Isquith to be named as the firm's representative. He then required Ms. Fait to submit additional papers—which were unopposed—in support of her continued participation on the steering committee, which he then allowed. As represented by Wolf Haldenstein and not contested by Ms. Fait, in *In re Text Messaging Antitrust Litigation*, the steering committee, including Wolf Haldenstein, has collective financial responsibility for the lawsuit. Certain members of the committee have indicated that they would cover Ms. Fait's financial obligations. Thus, although Ms. Fait represents that "[t]wo other judges in this district have found [her] resources to be sufficient," in fact her continued representation in *In re Text Messaging Antitrust Litigation* as one of 12 members of a steering committee was agreed to and with the understanding that other firms would pay her share of the expenses.

In the second case referred to by Ms. Fait, *In re Evanston Northwestern Healthcare Corporation Antitrust Litigation* (No. 07 CV 4446), Judge Chang ruled that individual attorneys would be "interim class counsel." Ms. Fait was one of the appointees. When Ms. Fait resigned from Wolf Haldenstein, all of the named plaintiffs stated that Ms. Fait and the co-counsel should remain in their positions and the Court obliged.

9

In this case, the decision to proceed with a single lead counsel makes sense for several reasons. First, as noted above, neither Ms. Fait nor Lovell Stewart supports a three-firm lead counsel structure because it likely would involve waste, inefficiencies, and duplicative effort, none of which are in the best interests of the class.[4] Second, as set forth above, Ms. Fait has not demonstrated that she has the resources and staff to make a full contribution as co-lead counsel, particularly in light of the substantial work that remains to be done and resources that will need to be expended in regard to the proposed settlement and further litigation on the merits with respect to Defendant Schreiber. She has had the opportunity—in the midst of several requests for additional briefing by Ms. Fait and Wolf Haldenstein—to present such evidence, but has failed to do so. Third, the Chicago-based Wolf Haldenstein lawyer with the primary, day-to-day responsibilities in this case has been Mr. Bell, who does not appear to have the type of extensive antitrust experience that would be typical of the senior lawyer at a firm serving as co-lead counsel in an MDL case. Although he has done almost three times the work of either Ms. Fait or Mr. Isquith on the case, it is evident from all of the filings on this issue that Mr. Bell essentially reported to Ms. Fait and Mr. Isquith, who have been the senior antitrust lawyers on the case from Wolf Haldenstein. Finally, the Wolf Haldenstein complaint, for which Ms. Fait takes credit, was the fifth (and last) direct purchaser complaint filed in this district. The complaint filed by Lovell Stewart preceded the Wolf Haldenstein complaint by almost a month.

Perhaps most significantly, no one contests that Lovell Stewart has done the majority of work in this case. This includes most of the work in connection with the proposed settlement

---

[4] Lovell Stewart submitted a statement concerning Ms. Fait's motion, noting that it takes "no position on which successor entity should be appointed as our co-lead counsel" and "oppos[ing] any appointment of both successors as separate co-lead counsel" as "contrary to the interests of the class." Lovell Stewart noted, "The amount of work in the case to date and the prospective work remaining, while large, was **not** and will not be the type of case for which three co-lead counsel are appropriate." See Dkt. No. 391 (emphasis in original).

between Direct Purchaser Plaintiffs and the DFA Defendants, as well as a majority of the work pertaining to Defendant Schreiber. And based on Lovell Stewart's experience in similar cases, that firm appears more than capable of handling the lead counsel role in this case on a going forward basis, with input from other interested counsel including Ms. Fait, Mr. Isquith, Mr. Bell, and anyone else at Wolf Haldenstein or any other firm who has a contribution to make. Lovell Stewart represents that it has been the sole lead counsel in the first and second largest class action recoveries for manipulation in violation of the CEA and co-lead counsel in the third and fourth largest class action recoveries for manipulation in violation of the CEA.

Based on the forgoing, Lovell Stewart's appointment as sole lead counsel makes sense. Judge Hibbler's decision in 2010 to appoint Wolf Haldenstein, with a presence in Chicago as well as substantial resources, as co-lead counsel also made sense: they were local and had two accomplished antitrust lawyers to boot. However, Judge Hibbler's initial order expressly contemplated annual review of the lead counsel issues [see 63], and at this stage in the proceedings—with the disintegration of the relationship between Ms. Fait and Wolf Haldenstein and the absence of a senior antitrust lawyer in Wolf Haldenstein's Chicago office—the Court concludes that appointing Lovell Stewart as sole lead counsel is the logical choice. Lovell Stewart's documented experience in these types of cases, as well as its demonstrated capacity and leading role in this litigation over the past four years, puts it in the best position to continue to fairly and adequately represent the interests of Direct Purchaser Plaintiffs as lead counsel.

With that said, the Court concludes that Wolf Haldenstein is best situated to remain significantly involved in the case as local counsel should it be willing to serve in that capacity. Given that Wolf Haldenstein has a Chicago office and that Mr. Bell is resident in that office and has had substantial involvement in the case, the Court believes that keeping Wolf Haldenstein on

this case as local counsel is in the best interests of the class.[5]   The Court again emphasizes that nothing in this opinion is meant to slight Wolf Haldenstein's and Ms. Fait's contributions during the time that Wolf Haldenstein served as co-lead counsel or to suggest that they do not have further contributions to make as the case moves forward.   All that this order accomplishes is to conform the appointment of lead and local counsel to reflect changes in the relationships between the lawyers representing Direct Purchaser Plaintiffs such that the counsel structure is "best able to represent the interests of the class."  Fed. R. Civ. P. 23(g)(2).

## IV.    Conclusion

For these reasons, the Court grants in part and denies in part the motion to modify the appointment of one of the co-lead counsel in this matter [372], modifies Judge Hibbler's prior orders [61, 63], and appoints Lovell Stewart & Halebian LLP as sole lead interim counsel for the Direct Purchaser Plaintiffs pursuant to Federal Rule of Civil Procedure 23(g)(3), with Wolf Haldenstine Adler Freeman & Herz LLC serving as local counsel.   The Court denies Wolf Haldenstein's motion for leave to file a sur-reply to Mary Jane Fait's reply in support of her

---

[5] The Court is aware that liaison counsel may be appointed at the discretion of the Court.  See, *e.g., In re Ameriquest Mortg. Co. Mortg. Lending Practices Litig.,* 2008 WL 5170769, at *2 (N.D. Ill. Dec. 10, 2008). The MCL § 10.221 outlines the responsibilities of liaison counsel:

> Charged with essentially administrative matters, such as communications between the court and other counsel (including receiving and distributing notices, orders, motions, and briefs on behalf of the group), convening meetings of counsel, advising parties of developments, and otherwise assisting in the coordination of activities and positions. Such counsel may act for the group in managing document depositories and in resolving scheduling conflicts.  Liaison counsel will usually have offices in the same locality as the court. The court may appoint (or the parties may select) a liaison for each side, and if their functions are strictly limited to administrative matters, they need not be attorneys.

At this time, the arrangement of Lovell Stewart as lead counsel and Wolf Haldenstein as local counsel appears all that is needed to efficiently and effectively represent the interests of Direct Purchaser Plaintiffs.

motion to substitute [393]. Wolf Haldenstein's sur-reply [393] as well as all additional briefing

and declarations [400, 401, 402, and 407] following Ms. Fait's reply brief are stricken.

Dated:  November 15, 2013                  _____
                                           Robert M. Dow, Jr.
                                           United States District Judge