IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| IN RE: DAIRY FARMERS OF AMERICA, INC. CHEESE ANTITRUST LITIGATION | ) ) ) | Master File No. 09-cv-03690 MDL No. 2031 |
| THIS DOCUMENT RELATES TO: | ) ) ) | The Honorable Robert M. Dow Jr. |
| DIRECT PURCHASER ACTION | ) | |

**ORDER PRELIMINARILY APPROVING PROPOSED SETTLEMENT,
SCHEDULING HEARING FOR FINAL APPROVAL THEREOF, AND APPROVING
THE PROPOSED FORM AND PROGRAM OF NOTICE TO THE CLASS**

The Direct Purchaser Plaintiffs, having applied for an order preliminarily approving the proposed Stipulation and Agreement of Settlement dated December 18, 2013 ("Settlement Agreement" or "Settlement") with the Settling Defendants upon the terms and conditions set forth in the Settlement Agreement, and the Court having read and considered the Settlement Agreement and accompanying documents; and all Parties to the Settlement Agreement having consented to the entry of this Scheduling Order ("Order"),

NOW, THEREFORE, this 17th day of March, 2014, upon application of the Parties to the Settlement Agreement,

**IT IS HEREBY ORDERED** that:

1. Except for the terms defined herein, the Court adopts and incorporates the definitions in the Settlement Agreement for the purposes of this Order.

2. Pursuant to Federal Rule of Civil Procedure 23, the Court hereby finds that the requirements for a class action have been met and preliminarily certifies the following Class for settlement purposes only:

>All persons who between April 1, 2004 through December 31, 2006: (1) purchased a CME Class III milk futures contract; (2) purchased a CME Cheese Spot Call contract for either blocks or barrels; (3) purchased cheese directly from Dairy Farmers of America, Inc. ("DFA") or Schreiber Foods, Inc. ("Schreiber") or made a first purchase of cheese from a first manufacturer of cheese (*i.e.* a manufacturer that transforms milk into cheese) pursuant to a contract the price term of which specified that the price was based, in whole or in part, on the CME Cheese Spot Call price (block or barrel price, average price, specific price, price formula, collar price or any variation that explicitly referenced the CME Cheese Spot Call price); or (4) purchased milk directly from DFA or made a first purchase of milk from a first producer of milk (*e.g.,* a dairy farmer) that was made pursuant to a contract the price term of which specified that the price was based, in whole or in part, on (i) the CME Cheese Spot Call price (block or barrel price, average price, specific price, price formula, collar price or any variation that explicitly referenced the CME Cheese Spot Call price); (ii) the CME Class III milk futures price; (iii) the National Agricultural Statistics Service ("NASS") cheese price; or (iv) a government milk formula price which included (i), (ii) or (iii) as a component of such government milk formula price. Excluded from the Class are the Settling Defendants, the Non-Settling Defendants, and any parent, subsidiary, affiliate, or agent of any Settling Defendant or Non-Settling Defendant.

3. The Court hereby appoints Lovell Stewart Halebian Jacobson LLP as class counsel, having determined that the requirements of Rule 23(g) of the Federal Rules of Civil Procedure are fully satisfied by this appointment.

4. Plaintiffs Indriolo Distributors, Inc., Knutson's, Inc., and Valley Gold, LLC are hereby appointed as representatives of the Class.

5. A hearing will be held on Tuesday, August 19, 2014 at 10:00 a.m. in Courtroom 1919 of this Courthouse before the undersigned, to consider the fairness, reasonableness, and adequacy of the Settlement Agreement (the "Settlement Hearing"). The foregoing date, time, and place of the Settlement Hearing shall be set forth in the mail notice and publication notice which is ordered herein, but shall be subject to adjournment or change by the Court without

2

further notice to the Members of the Class other than that which may be posted at the Court, on the Court's website and/or the official settlement website.

6. The Court reserves the right to approve the Settlement at or after the Settlement Hearing with such modifications as may be expressly consented to by all Parties to the Settlement Agreement and without further notice to the Class.

7. Within seven days after the date of the entry of this Order, Lead Counsel shall cause copies of the long form notice, substantially in the form attached as Exhibit A to the Settlement Agreement, to begin to be mailed by United States first class mail, postage prepaid, to each of the following potential Class Members: (a) to all the "large traders" in the Chicago Mercantile Exchange ("CME") Class III milk futures contract during the Class Period whose names were obtained by the Direct Purchaser Plaintiffs pursuant to subpoena to the CME; (b) to all the firms who were clearing brokers on the CME during the Class Period whose names and addresses were obtained by the Direct Purchaser Plaintiffs pursuant to subpoena to the CME (such clearing firms shall forward copies of the long form notice to their customers who transacted in CME Class III milk futures contracts or CME Cheese Spot Call contracts during the Class Period or such clearing firms shall provide the names and addresses of such customers to the Direct Purchaser Plaintiffs and/or the Settlement Administrator); (c) to the customers of defendants Dairy Farmers of America, Inc. ("DFA") and Schreiber Foods, Inc. ("Schreiber") during the Class Period whose names and addresses were obtained by the Direct Purchaser Plaintiffs from DFA and Schreiber; (d) to the 100 largest dairy companies in the United States; and (e) any additional reasonably identifiable members of the Class. The foregoing mailings shall be completed by the later of twenty (20) days after the Scheduling Order is entered or seven (7) days after time by which any names and addresses are supplied to the Settlement

Administrator pursuant to any subsequent order of the Court requiring such names and addresses be provided to the Settlement Administrator.

8. As soon as practicable after the mailing of the notice commences, Lead Counsel shall cause to be published a publication notice substantially in the form of Exhibit B to the Settlement Agreement in the following four publications and/or such publications' websites: (a) Cheese Market News; (b) Dairy Foods; (c) The Cheese Reporter; and (d) Hoard's Dairyman.

9. Lead Counsel shall also cause the long form notice to be published on a website established for purposes of this Settlement, www.DairyFarmersDirectPurchaserAction.com, within 10 days after the entry of this Order. Both the long form notice and the publication notice will direct Members of the Class to the website where they can access the Settlement Agreement, this Order, the motion for preliminary approval, answers to anticipated questions about class action settlements, the Proof of Claim, the Request for Exclusion, and other information.

10. The Court approves, in form and substance, the Class Notice. The form and method of notice specified herein is the best notice practicable under the circumstances and shall constitute due and sufficient notice of the Settlement and the Settlement Hearing to all persons entitled to receive such notice, and fully satisfies the requirements of due process, Rule 23 of the Federal Rules of Civil Procedure, and applicable law.

11. The terms of the Settlement Agreement are hereby preliminarily approved. The Court finds that the Settlement Agreement was entered into at arm's-length by experienced counsel and is, in all respects, fair, reasonable and adequate, and in the best interests of the Class, including the Direct Purchaser Plaintiffs, such that notice of the Settlement Agreement should be given as provided in this Order. The terms of the Plan of Allocation are preliminarily approved as within the range of reasonableness.

12. Class Counsel shall file their motions for payment of attorneys' fees and reimbursement of expenses and for final approval of the Settlement at least 30 days prior to the Settlement Hearing.

13. Any Member of the Class who objects to any aspect of the Settlement or the Final Order and Judgment, or who otherwise wishes to be heard, and who has not requested exclusion from the Settlement, may appear in person or by his or her attorney at the Settlement Hearing and present evidence or argument that may be proper and relevant; provided, however, that, except for good cause shown, no person other than Lead Counsel and counsel for the Settling Defendants shall be heard and no papers, briefs, pleadings, or other documents submitted by any Member of the Class shall be considered by the Court unless, not later than 23 days prior to the Settlement Hearing directed herein the objecting Member of the Class files the following with the Court and serves the same on or before such filing by hand or overnight mail on Lead Counsel and all counsel of record for the Settling Defendants:

(i) if a Member of the Class intends to appear and be heard at the Settlement Hearing, a written notice of intention to appear;

(ii) proof of membership in the Class;

(iii) a detailed statement of the objections to any matters before the Court;

(iv) a statement advising of any court proceeding in which said objector has made an objection to a proposed class action settlement within the past three years, including case name, docket number, and court;

(v) if a Member of the Class intends to appear and be heard at the Settlement Hearing, the grounds or reasons why the Member of the Class desires to appear and be heard; and

(vi) all documents or writings the Member of the Class desires the Court to consider.

14. Any Member of the Class who fails to object in the manner described in Section 13 of this Order shall be deemed to have waived the right to object (including any right of appeal) and shall be forever barred from raising such objection in this Action or any other action or proceeding. Discovery concerning any purported objections to the Settlement shall be completed no later than three days before the Settlement Hearing.

15. Any request for exclusion from the Settlement by a Member of the Class must be made in writing, include all information requested in the "Request For Exclusion" attached hereto as Exhibit A, and be received by the Settlement Administrator no later than forty days before the Settlement Hearing. Requests for exclusion that do not include all of the requested information will be held invalid.

16. At least seven days prior to the Settlement Hearing, Lead Counsel shall cause to be served and filed a sworn statement attesting to compliance with the notice provisions in Sections 7-9 of this Order.

17. All Proofs of Claim shall be submitted by Class Members as directed in the long form class notice no later than 60 days after the Settlement Hearing.

18. To effectuate the Settlement Agreement and the notice provisions, the Court hereby approves Rust Consulting, Inc. (the "Settlement Administrator") to be responsible for: (a) establishing a P.O. Box, information telephone line and website (to be included in the long form notice and publication notice) for the purpose of communicating with Members of the Class; (b) disseminating notice to the Members of the Class; (c) accepting and maintaining documents sent from Class Members including Proofs of Claim, and other documents relating to claims administration; (d) administering claims for allocation of funds among Members of the Class; and (e) acting as Escrow Agent for the Settlement Fund.

19. The Settlement Agreement and any negotiations, statements, discovery or proceedings in connection therewith, shall not be construed or deemed evidence of, a presumption of, concession of, or admission by, any of the Released Parties or any other person of any fault, liability, or wrongdoing as to any facts or claims alleged or asserted in the Action or otherwise, or that the Direct Purchaser Plaintiffs, the Class, or any other Person, have suffered any damage attributable in any manner to any of the Released Parties. The Settlement Agreement and any negotiations, statements, discovery or proceedings in connection therewith, shall not be construed or deemed evidence of, a presumption of, concession of, or admission or lack of merit of any of the claims in this Action. The existence of the Settlement Agreement, its contents, and any negotiations, statements, discovery or proceedings in connection therewith, shall not be offered or admitted into evidence or referred to, interpreted, construed, invoked, or otherwise used by any person for any purpose in the Action or otherwise, except as may be necessary to enforce or obtain Court approval of the Settlement. Notwithstanding the foregoing, all materials provided by Settling Defendants or any Released Party during the discovery process in the Action, either before or after the date of this Settlement Agreement, may be used by the Direct Purchaser Plaintiffs in their claims in this Action.

20. If the Settlement is approved by the Court following the Settlement Hearing, a Final Order and Judgment will be entered as described in the Settlement Agreement.

21. If the Settlement, including any amendment made in accordance with the Settlement Agreement, is not approved by the Court or the Effective Date does not occur for any reason, the Settlement (including any modification thereof made with the express consent of all Parties as provided for in the Settlement Agreement), and preliminary certifications herein and any actions taken or to be taken in connection therewith (including this Order and any judgment

entered herein) shall be terminated and shall become void and of no further force and effect. In that event, neither the Settlement Agreement, nor any provision contained in the Settlement Agreement, nor any action undertaken pursuant thereto, nor the negotiation thereof or discovery provided solely in connection with the negotiations by any party, shall be deemed an admission or concession, or received as evidence in this or any other action or proceeding.

22. The Court may, for good cause, extend any of the deadlines set forth in this Order without notice to Members of the Class.

23. In the event that the Settlement Agreement is terminated in accordance with its provisions, the Settlement Agreement and all proceedings had in connection therewith shall be null and void, except as expressly provided to the contrary in the Settlement Agreement, and without prejudice to the *status quo ante* rights of the Parties.

24. If the Settlement Agreement is terminated, not approved by the Court, or the Effective Date does not occur for any reason, the Court will modify any existing scheduling order to ensure that the Parties will have sufficient time to prepare for the resumption of litigation.

25. Pending final determination of whether the Settlement should be finally approved, all Direct Purchaser Plaintiffs and putative Class Members and anyone who acts or purports to act on their behalf are hereby barred and enjoined from instituting, commencing or prosecuting any action asserting any Released Claims against the Released Parties, and any other action or proceedings brought by any putative Class Members asserting any Released Claims against the Released Parties are hereby stayed and suspended until further order of the Court. Provided, however, that this provision shall not apply to claims asserted in *Pizza Hut, Inc., et al. v. Dairy Farmers of America, Inc., et al.*, Case No. 1016-CV-27996 (Circuit Court of Jackson County,


Missouri at Independence) or *Unified Foodservice Purchasing Co-op, LLC v. Dairy Farmers of America, Inc.*, Case No. 52-459-334-11 (American Arbitration Association).

26. If any deadline imposed herein falls on a non-business day, then the deadline is extended until the next business day.

**IT IS SO ORDERED.**

Signed this 17TH day of _MARCH, 2014, at the Courthouse for the United States District Court for the Northern District of Illinois.

Hon. Robert Michael Dow, Jr.
United States District Court Judge

# **EXHIBIT A**

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| IN RE: DAIRY FARMERS OF AMERICA, INC. CHEESE ANTITRUST LITIGATION | ) ) ) | Master File No. 09-cv-03690 MDL No. 2031 |
| THIS DOCUMENT RELATES TO: | ) ) | The Honorable Robert M. Dow Jr. |
| DIRECT PURCHASER ACTION | ) ) | |

**REQUEST FOR EXCLUSION FROM CLASS ACTION SETTLEMENT**

*Complete This Form Only If You Choose <u>Not</u> To Participate In This Settlement*

**I.      Instructions**

1. This "Request For Exclusion" may be used to exclude yourself from the partial Settlement in the above captioned class action. If you wish to remain a member of the Class (as defined below), do not complete or return this Request For Exclusion. Before deciding whether to request exclusion from the Settlement or take other action, make sure you have read the Notice of Partial Settlement of Action August 19, 2014 Hearing Thereon And Class Members' Rights ("Notice").

2. In order to validly exclude yourself from the Settlement, you must complete, sign, and return this Request For Exclusion to the Settlement Administrator at the address set forth below. Your Request For Exclusion must be <u>received</u> by the Settlement Administrator on or before Thursday, July 10, 2014.

> Dairy Farmers of America, Inc. Cheese Antitrust Litigation Settlement
> c/o Rust Consulting, Inc.
> P.O. Box 2428
> Faribault, MN 55021-9128

3. This Request For Exclusion adopts and incorporates the definitions in the Stipulation and Agreement of Settlement, dated December 18, 2013, which is available on the settlement website at www.DairyFarmersDirectPurchaserAction.com

4. In order to exclude yourself from the Settlement you must be a member of the following Class:

> All persons who between April 1, 2004 through December 31, 2006: (1) purchased a CME Class III milk futures contract; (2) purchased a CME Cheese Spot Call contract for either blocks or barrels; (3) purchased cheese directly from Dairy Farmers of America, Inc. ("DFA") or Schreiber Foods, Inc. ("Schreiber") or made a first purchase of cheese from a first manufacturer of cheese (*i.e.* a

11

manufacturer that transforms milk into cheese) pursuant to a contract the price term of which specified that the price was based, in whole or in part, on the CME Cheese Spot Call price (block or barrel price, average price, specific price, price formula, collar price or any variation that explicitly referenced the CME Cheese Spot Call price); or (4) purchased milk directly from DFA or made a first purchase of milk from a first producer of milk (*e.g.,* a dairy farmer) that was made pursuant to a contract the price term of which specified that the price was based, in whole or in part, on (i) the CME Cheese Spot Call price (block or barrel price, average price, specific price, price formula, collar price or any variation that explicitly referenced the CME Cheese Spot Call price); (ii) the CME Class III milk futures price; (iii) the National Agricultural Statistics Service ("NASS") cheese price; or (iv) a government milk formula price which included (i), (ii) or (iii) as a component of such government milk formula price. Excluded from the Class are the Settling Defendants, the Non-Settling Defendants, and any parent, subsidiary, affiliate, or agent of any Settling Defendant or Non-Settling Defendant.

II. **Background Information**

STATE OF            )
COUNTY OF       )

_____, being duly sworn, deposes and says:

    1.    Please provide the following information:

        Name of Person Requesting Exclusion: _____

        \_\_\_ Individual \_\_\_ Corporation \_\_\_ Estate \_\_\_Other (specify) _____

        Name of Person Executing Request For Exclusion: _____

        Capacity of Person Executing Request For Exclusion: _____

        Address: _____

        Daytime Phone Number: _____

        Social Security or Tax Identification Number: _____

        E-mail Address: _____

        Nature Business: _____

III. **Information Concerning Certain Transactions**

Please provide the following information concerning certain transactions in (A) Chicago Mercantile Exchange ("CME") Class III milk futures contracts; (B) CME cheese spot call contracts; (C) physical cheese and/or (D) physical milk.

   A. **CME Class III Milk Futures Contracts**. Please identify below the volume of CME Class III milk futures contracts you purchased and/or sold during the Relevant Period (*i.e.*, May 4, 2004 – June 25, 2004 and September 1, 2004 through October 7, 2004). Please also identify below the volume of June 2004 CME Class III milk futures contracts you purchased and/or sold during the time period June 26, 2004 through July 2, 2004. Separately, please identify the number of May 2004 and June 2004 CME Class III milk futures contracts that you cash settled. For the avoidance of doubt, "sale" means, closing a long position and opening a short position and "purchase" means closing a short position and opening a long position.

   1. Number of CME Class III milk contracts <u>purchased</u> (a) between May 4, 2004 – June 25, 2004, inclusive: _____ (contracts) and (b) between September 1, 2004 – October 7, 2004, inclusive: _____ (contracts).

   2. Number of CME Class III milk contracts <u>sold</u> (a) between May 4, 2004 – June 25, 2004, inclusive _____ (contracts) and (b) between September 1, 2004 – October 7, 2004, inclusive: _____ (contracts).

   3. Number of June 2004 CME Class III milk contracts (a) <u>purchased</u> between June 26, 2004 – July 2, 2004, inclusive: _____ (contracts) and (b) <u>sold</u> between June 26, 2004 – July 2, 2004, inclusive: _____ (contracts).

   4. Number of May 2004 CME Class III milk contracts cash settled as a result of (a) closing a short position: _____ (contracts) and (b) closing a long position: _____ (contracts).

   5. Number of June 2004 CME Class III milk contracts cash settled as a result of (a) closing a short position: _____ (contracts) and (b) closing a long position: _____ (contracts).

   6. Were any of the transactions you identified above hedging transactions? That is, were any of your transactions in CME Class III milk futures contracts identified above acquired in connection with offsetting positions (in whole or in part) held in the cash or other derivative markets? YES \_\_\_ or NO \_\_\_\_.

   B. **CME Cheese Spot Call Contracts**. Please identify below the volume of CME cheese spot call contracts you purchased and/or sold during the Relevant Period (*i.e.*, May 4, 2004 – June 25, 2004 and September 1, 2004 through October 1, 2004).

   1. Number of CME cheese spot call contracts <u>purchased</u> (a) between May 4, 2004 – June 25, 2004, inclusive: _____ (blocks) / _____ (barrels) and (b) between September 1, 2004 – October 1, 2004, inclusive: _____ (blocks) / _____ (barrels).

13

    2. Number of CME cheese spot call contracts <u>sold</u> (a) between May 4, 2004 – June 25, 2004, inclusive: _____ (blocks) / _____ (barrels) and (b) between September 1, 2004 – October 1, 2004, inclusive: _____ (blocks) / _____ (barrels).

    C. **Physical Cheese Purchases**.  Please identify below (a) the volume of physical cheese you purchased from Dairy Farmers of America, Inc. ("DFA") or Schreiber Foods, Inc. ("Schreiber") during the Relevant Period and/or (b) the volume of your first purchases of physical cheese from a first manufacturer of cheese (*i.e.* a manufacturer that transforms milk into cheese) pursuant to a contract the price term of which specified that the price was based, in whole or in part, on the CME Cheese Spot Call price (block or barrel price, average price, specific price, price formula, collar price or any variation that explicitly referenced the CME Cheese Spot Call price) during the Relevant Period (*i.e.*, May 4, 2004 – June 25, 2004 and September 1, 2004 through October 1, 2004).

    1. Volume of physical cheese purchased from DFA or Schreiber (a) between May 4, 2004 – June 25, 2004, inclusive: _____ (pounds or dollars) and (b) between September 1, 2004 – October 1, 2004, inclusive: _____ (pounds or dollars).

    2. Volume of first purchases of physical cheese from a first manufacturer of cheese (*i.e.* a manufacturer that transforms milk into cheese) pursuant to a contract the price term of which specified that the price was based, in whole or in part, on the CME Cheese Spot Call price (block or barrel price, average price, specific price, price formula, collar price or any variation that explicitly referenced the CME Cheese Spot Call price) (a) between May 4, 2004 – June 25, 2004, inclusive: _____ (pounds or dollars) and (b) between September 1, 2004 – October 1, 2004, inclusive: _____ (pounds or dollars).

    D. **Physical Milk Purchases**.  Please identify below (a) the volume of physical milk you purchased from DFA during the Relevant Period and/or (b) the volume of your first purchases of physical milk from a first producer of milk (*e.g.,* a dairy farmer) that was made pursuant to a contract the price term of which specified that the price was based, in whole or in part, on (a) the CME Cheese Spot Call price (block or barrel price, average price, specific price, price formula, collar price or any variation that explicitly referenced the CME Cheese Spot Call price); (b) the CME Class III milk futures price; (c) the National Agricultural Statistics Service ("NASS") cheese price; or (d) a government milk formula price which included (a), (b) or (c) as a component of such government milk formula price during the Relevant Period (*i.e.*, May 4, 2004 – June 25, 2004 and September 1, 2004 through October 1, 2004).

    1. Volume of physical milk you purchased from DFA (a) between May 4, 2004 – June 25, 2004, inclusive: _____ (cwt or dollars) and (b) between September 1, 2004 – October 1, 2004, inclusive: _____ (cwt or dollars).

14

        2.    Volume of your first purchases of physical milk during the Relevant Period from a first producer of milk (*e.g.,* a dairy farmer) that was made pursuant to a contract the price term of which specified that the price was based, in whole or in part, on (a) the CME Cheese Spot Call price (block or barrel price, average price, specific price, price formula, collar price or any variation that explicitly referenced the CME Cheese Spot Call price); (b) the CME Class III milk futures price; (c) the NASS cheese price; or (d) a government milk formula price which included (a), (b) or (c) as a component of such government milk formula price (a) between May 4, 2004 – June 25, 2004, inclusive: _____ (cwt or dollars) and (b) between September 1, 2004 – October 1, 2004, inclusive: _____ (cwt or dollars).

**IV.**    <u>**Certifications**</u>

        1.    I certify that I am a member of the Class as defined in Section I above.

        2.    I certify that I have read the Notice which explains my rights with respect to the Settlement. After reading the Notice, I have decided to opt out of the Settlement. By opting out of the Settlement, I understand that I will not be eligible to share in the Net Settlement Fund. And I understand that by opting out I may independently pursue any claims I may have against the Settling Defendants at my own expense.

        3.    I certify that I have taken reasonable efforts to locate all the information requested in Section III above.

        4.    By signing below, I acknowledge that I am voluntarily excluding myself from the Settlement.

**I declare and affirm under penalties of perjury that the foregoing statements and the information provided herein are true, correct and complete.**

        This Request For Exclusion was executed this _____ day of _____ 20____ in _____ (City), _____(State), _____ (Province), _____(Country).

_____
Signature of Class Member Requesting Exclusion

_____
Type or Print Name

_____
Capacity of Person Signing (*e.g.*, President, Trustee, Custodian, etc.)

        If you are acting for an entity, please submit proof of your authority (*e.g.*, corporate resolution, trust agreement, etc.).

Sworn to before me this _____ day of _____, 20__
_____
     Notary Public

15