IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| IN RE:  DAIRY FARMERS OF AMERICA, ) | |
| INC. CHEESE ANTITRUST LITIGATION ) | Master File No. 09-cv-03690 |
| ) | MDL No.  2031 |
| THIS DOCUMENT RELATES TO: ) | Judge Robert M. Dow, Jr. |
| ) | Magistrate Judge Maria Valdez |
| DIRECT PURCHASER ACTION ) | |
| ) | |

**DIRECT PURCHASER PLAINTIFFS' MEMORANDUM IN SUPPORT OF LEAD
COUNSEL'S PETITION FOR AN AWARD OF ATTORNEYS' FEES
AND <u>REIMBURSEMENT OF EXPENSES</u>**

<u>**CORRECTED COPY**</u>

**Errata To Direct Purchaser Plaintiffs' Memorandum of Law in Support of Lead Counsel's <u>Petition for an Award of Attorneys' Fees and reimbursement of Expenses</u>**

| Page : Line | Correction |
|:---:|:---|
| | |
| 2:16 | Delete ", and" after "provided" |
| 3:19 | Add "(attached as Exhibit B)" to *In re BP Propane* citation |
| 4:2 | Add "(attached as Exhibit C)" to *In re Natural Gas* citation |
| 4:4 | Add "(attached as Exhibit D)" to *In re Potash* citation |
| 6:22 | Replace "Schreiber" with "DFA" |
| 11:16 | Replace "August 2005" with "2008" and correct citation to "¶14" |
| 12:12 | Replace "$488,491.24" with "$487,881.24" |
| 12: 13 (Matrix) | Replace "$293,581.88" with "292,971.88" and replace "$488,491.24" with "$487,881.24" |
| 13:4 | Replace "$147,676.18" with "197,552.67" |
| 13:5-6 | Replace "59,314.74" with "$142,989.58" and correct citation to "¶¶11, 14" |
| 13:7 | Replace "80.9%" with "80.8%" |
| 13:9, 12 | Replace "$488,491.24" with "$487,881.24" |
| Exhibits B, C, D | Add Exhibits B, C and D (*see* above corrections at pp. 3-4) |

## TABLE OF CONTENTS

I.  Preliminary Statement ....................................................................................1

    A.  Non-Reversionary Cash Payment Benefits to the Class ...........................1

    B.  Remedial Relief Benefits to the Class ....................................................1

    C.  The Requested Fee Of One-Third Of The Cash Payment Portion Of
        The Benefits From The Settlement, Is Fair And Reasonable ..................2

        1.  Even When No Remedial Benefits Are Present, Courts Have
            Repeatedly Awarded One-Third Fees In Respect Of Settlements Of
            The Complex And Risky Price Fixing Or Manipulation Claims
            Involving The Esoteric Futures Markets .......................................3

        2.  The Claims Here Are, If Anything, More Complex Than
            Those In Prior Similar Cases, And This Complexity Has Caused Greater
            Amounts Of Risk, Allocation Procedures, Amounts of Expenses,
            And Delays In Payment Of Fees And Expenses ..........................4

        3.  The Requested Fee Is Further Fair And Reasonable Because, In
            The Sixth Year Of Litigation, It Represents Only A Modest 1.34
            Multiplier To Compensate For Risks And Delays In Payment ............5

            a.  Additional Cases Awarding a One-Third Fee

            b.  The Lodestar Here is a Modest 1.34

II.  Statement of Facts ........................................................................................5

    A.  Chronology ..........................................................................................5

    B.  Class Counsel's Lodestar And The Expenses For Experts ....................12

III.  Argument ....................................................................................................13

    A.  The Requested Attorneys' Fees Are Reasonable And Should Be Awarded
        By This Court ......................................................................................13

        1.  The Court Should Apply The Percentage-Of-The-Fund Approach ...........13

        2.  Complexity, Length, And Expense ..........................................14

i

3.      Class Counsel's Extensive Work In This Risky Case, Resulted In An
        Excellent Result For The Class...................................................................15

4.      The Resulting 1.34 Multiplier To Compensate For Risks And Delays
        In Payments Is At The Low End Of Prior Lodestar Multiplier Cross-
        Checks........................................................................................................17

B.      The Requested Reimbursement Of Costs And Expenses Is Fair And
        Reasonable And Should Be Approved ...............................................................18

Conclusion ..................................................................................................................19

# TABLE OF AUTHORITIES

## Cases

*Adam Properties, Inc. v. Dairy Farmers of America, Inc.*,
   No. 08 Civ. 7232 (N.D. Ill.) ........................................................................................ 5

*Anixter v. Home-Stake Prod Co.*,
   77 F.3d 1215 (10th Cir. 1996) ..................................................................................... 15

*Arenson v. Board of Trade of City of Chicago*,
   372 F. Supp. 1349 (N.D. Ill. 1974) .............................................................................. 14

*Cook v. Niedert*,
   142 F.3d 1004 (7th Cir. 1998) ..................................................................................... 18

*Copperweld Corp. v. Independence Tube Corp.*,
   467 U.S. 752 (1984) ...................................................................................................... 6

*Gaskill v. Gordon*,
   160 F.3d 361 (7th Cir. 1998) ....................................................................................... 13

*Goldsmith, et al. v. Technology Solutions Co., et al.*,
   92 C 4374, 1995 WL 17009594 (N.D. Ill. Oct. 10. 1995) ........................................... 14

*Great Neck Capital Appreciation Inv. Partnership, L.P. v. PricewaterhouseCoopers, L.L.P.*,
   212 F.R.D. 400 (E.D. Wis. 2002) ................................................................................ 18

*Harman v. Lyphomed, Inc.*,
   945 F.2d 969 (7th Cir. 1991) ...................................................................................... 18

*In re Am. Bank Note Holographics, Inc., Sec. Litig.*,
   127 F. Supp. 2d 418 (S.D.N.Y. 2001) ........................................................................ 16

*In re Apple Computer Sec. Litig.*,
   1991 WL 238298 (N.D. Cal. Sept. 6, 1991) ................................................................ 15

*In re BP Propane Direct Purchaser Antitrust Litig.*,
   06-CV-3621 (N.D. Ill.) ........................................................................................... 3, 18

*In re Dairy Farmers of America, Inc. Cheese Antitrust Litig.*,
   767 F.Supp.2d 880 (N.D. Ill. 2011) .................................................................. 6, 7

*In re JDS Uniphase Corp. Sec. Litig.* No. C-02-1486 CW(EDL),
   2007 WL 4788556 (N.D. Cal. Nov. 27, 2007) ............................................ 15

*In re Lithotripsy Antitrust Litig.*, 98-cv-8394,
   2000 WL 765085 (N.D. Ill. June 12, 2000) ................................................ 14

*In re Lithotripsy Antitrust Litigation*,
   2000 WL 765086 (N.D. Ill. 2000) ................................................................ 14

*In re NASDAQ Market-Makers Antitrust Litig.*,
   187 F.R.D. 465 (S.D.N.Y. 1998) .................................................................. 16

*In re Natural Gas Commodity Litig.*,
   03-CV-6186 Docket No. 445 (VM) (S.D.N.Y.) ............................................. 3

*In re Natural Gas Commodity Litig.*,
   03-CV-6186 Docket No. 507 (VM) (S.D.N.Y.) ........................................... 18

*In re Natural Gas Commodity Litig.*,
   358 F.Supp.2d 336, 340 (S.D.N.Y. 2005) .................................................. 16

*In re Potash Antitrust Litig.*,
   No. 08 Civ. 6910, Dkt. Nos. 590 and 592 (RC) (N.D. Ill.) .......................... 4

*In re Processed Egg Products Antitrust Litig.*,
   2012 WL 5467530 (E.D. Pa. Nov. 9, 2012) ............................................... 14

*In re Soybeans Futures Litig.*,
   No. 89 Civ. 7009 Docket Nos. 470-471 (N.D. Ill.) .................................. 3, 16

*In re Sumitomo Copper Litig.*,
   74 F.Supp.2d 393 (S.D.N.Y. 1999) ............................................................ 18

*In re Synthroid Mktg. Litig.*,
   264 F.3d 712 (7th Cir. 2001) ........................................................ 13, 15, 18

iv

*In re TFT-LCD (Flat Panel) Antitrust Litig.*,
  Special Verdict (N.D. Cal. Dkt. No. 8562, Sep. 3, 2013) ........................................... 16

*Isby v. Bayh*,
  75 F.3d 1191 (7th Cir. 1996) ................................................. 14

*Kirchoff v. Flynn*,
  786 F.2d 320 (7th Cir. 1986) ................................................. 14

*Merrill Lynch, Pierce, Fenner & Smith v. Curran*,
  456 U.S. 353 (1982) ................................................. 3

*Montgomery v. Aetna Plywood, Inc.*,
  No. 95-C-3193, 1999 U.S. Dist. Lexis 4432 (N.D. Ill. Mar. 18, 1999) ..................................... 17

*Pennsylvania v. Delaware Valley Citizens' Council For Clean Air*,
  483 U.S. 711 (1986) ................................................. 15

*Reynolds v. Beneficial Nat 'l Bank*,
  288 F.3d 277 (7th Cir. 2002) ................................................. 20

*Robbins v. Koger Props., Inc.*,
  116 F.3d 1441 (11th Cir. 1997) ................................................. 15

*Schulte v. Fifth Third Bank*,
  805F.Supp.2d 560 (N.D. Ill. 2011) ................................................. 4, 13

*U.S. v. BP America Inc.*,
  No. 07 CR 683 (N.D. Ill.) ................................................. 15

## Other Authorities

H.R. Rep. No. 93-975, p. 1 (1974), 1974 U.S. Code Cong & Admin. News at 5843 .................... 3

## I.     PRELIMINARY STATEMENT

Pursuant to this Court's March 17, 2014 Order[1] and Fed. R. Civ. P. 23(h), Lead Counsel for the Direct Purchaser Plaintiffs ("Plaintiffs") respectfully submit this memorandum and the accompanying attorneys' declarations[2] in support of their motion for (a) an award of attorneys' fees to Class Counsel[3] for their professional services rendered in creating the substantial benefits provided to the Class by the settlement with the Dairy Farmers of America, Inc. Defendants ("DFA" or "DFA Defendants"), and (b) reimbursement of Class Counsel's expenses reasonably incurred in connection with the claims against the DFA Defendants.

**A.     Non-Reversionary Cash Payment Benefits to the Class.**  The DFA settlement provides an all cash payment of $46,000,000 plus interest.  The non-reversionary terms of the settlement provide, in effect, that no matter how many Class members fail to submit proofs of claim, none of the settlement monies will revert to Defendants.  Rather monies due to Class members who do not claim will be redistributed among claiming Class members *pro rata*.

**B.     Remedial Relief Benefits to the Class.**  The DFA settlement also provides significant remedial relief.  It consists of the following undertakings by DFA.  For a period of

---

[1] *See* Order Preliminarily Approving Proposed Settlement, Scheduling Hearing For Final Approval Thereof, And Approving The Proposed Form And Program Of Notice To The Class ("March 17, 2014 Order") [Docket No. 495] and the terms of the Stipulation and Agreement of Settlement [Docket No. 436-1].

Plaintiffs also rely on Plaintiffs' Memorandum In Support of Motion For Final Approval of Class Action Settlement and the other documents, pleadings and matters of record in this action.

Capitalized terms used herein are defined in the Stipulation and Agreement of Settlement. *See* Docket No. 487-1.

[2] Lead Counsel submit the accompanying declarations of Christopher M. McGrath, Esq., Fred Taylor Isquith, Esq., Marin A. Miller, Esq., Mary Jane Fait, Esq., Jeffrey A. Leon, Esq., Edward A. Cochran, Esq., and Geoffrey M. Horn, Esq.

[3] Class Counsel consists of the following: Lovell Stewart Halebian Jacobson LLP, Wolf Haldenstein Adler Freeman & Herz LLP, Edward W. Cochran, Finkelstein Thompson LLP, Lowey Dannenberg Cohen & Hart, P.C., Mary Jane Fait, Complex Litigation Group, and Miller Law LLC.

two (2) years from the date of final approval of the Settlement Agreement, DFA will only transact in Class III milk futures contracts for legitimate business purposes. Moreover, DFA may not purchase or sell Chicago Mercantile Exchange ("CME") Cheese Spot Call contracts unless the proposed transaction has been reviewed and approved by at least two (2) officers of DFA.

The reasons that such remedial relief is significant include the following. CME cheese prices largely determine the prices of transactions in cheese in the cash markets throughout the United States, as well as the federal minimum formula price of Class III physical milk in the U.S., and prices of Class III milk futures transactions.

DFA made approximately 50% of the purchases in the CME block cheese market for many years. The undertakings by DFA will impose an economic discipline on DFA's market transactions that was lacking during the Class Period, and allegedly is needed. This should help conform and stabilize DFA's conduct in these sensitive markets so as to reflect economic demand and supply.

That will remove the alleged example, invitation and provocation that DFA's conduct provided to similar deleterious behavior by others in such sensitive markets. The foregoing changes should materially improve the price discovery in, and reduce the prices to consumers generated by, these important markets.

**C.      The Requested Fee Of One-Third Of The Cash Payment Portion Of The Benefits From The Settlement, Is Fair And Reasonable**

Lead Counsel requests an award to Class Counsel of attorneys' fees in the amount of one-third of the $46,000,000 common fund (or $15,333,333.33). "In a certified class action, the court may award reasonable attorney's fees…that are authorized by law or by the parties' agreement." Fed.R.Civ.P. 23(h). Seeking Court approval for a one-third fee is expressly

2

authorized both by the Settlement Agreement as well as the Notice to the Class of such

Settlement. *E.g.*, the Settlement Agreement provides that Class Counsel would "seek an award

of Class Counsel attorneys' fees, to be paid from the Settlement Fund, not to exceed one-third of

the Settlement Fund and reimbursement of expenses. " Dkt. No. 487-1, Stipulation of

Settlement, Section 8(b) and Class Notice, Section V., p. 8 ("Lead Counsel will ask the Court for

an award of attorneys' fees in the amount of one-third of the Settlement Fund, as a common

fund, and for reimbursement of their costs and expenses in the amount of no more than

$600,000.00—all to be deducted from the (*available at*

http://www.dairyfarmersdirectpurchaseraction.com/Portals/0/Documents/DFA.Long.Form.Notic

e.pdf).

1. **Even When No Remedial Benefits Are Present, Courts Have Repeatedly Awarded One-Third Fees In Respect Of Settlements Of Complex And Risky Price Fixing Or Manipulation Claims Involving The Esoteric Futures Markets**

The claims being settled against DFA here are primarily claims for antitrust price fixing

or Commodity Exchange Act, 7. U.S.C. §1 *et seq.* ("CEA") manipulation arising from conduct in

the "esoteric"[4] commodity futures markets.

These claims have been extremely complex and difficult to prosecute. Courts in this

District and elsewhere have repeatedly awarded attorneys' fees on settlements of such claims in

an amount representing one-third of the cash settlement amount. *E.g.*, *In re Soybeans Futures

Litig.*, No. 89 Civ. 7009 Docket Nos. 470-471 (N.D. Ill.) (one-third fee award plus interest and

expenses); *In re BP Propane Direct Purchaser Antitrust Litig.*, 06-CV-3621 (N.D. Ill.) (JBZ).

(N.D. Ill.) (33% fee award plus interest and expenses) (attached as Exhibit B); *In re Natural Gas*

---

[4] *Merrill Lynch, Pierce, Fenner & Smith v. Curran*, 456 U.S. 353, 356 (1982) quoting H.R. Rep. No. 93-975, p. 1 (1974), 1974 U.S. Code Cong & Admin. News at 5843.

*Commodity Litig.*, 03-CV-6186 Docket No. 445 (VM) (S.D.N.Y.) (one-third fee award plus interest and expenses) (attached as Exhibit C); *see In re Potash Antitrust Litig.*, No. 08 Civ. 6910, Dkt. Nos. 590 and 592 (RC) (N.D. Ill.) (one-third fee award in complex international commodity case that did not involve commodity futures) (attached as Exhibit D).

These claims involve substantial risk. Moreover, unlike here, in none of the foregoing cases, was substantial remedial relief also provided.

> Where a settlement includes substantial affirmative relief, such relief must be considered in evaluating the overall benefit to the class. *Will,* 2010 WL 4818174, at *1 (citing Manual for Complex Litigation (Fourth) § 21.71, at 337 (2004); Principles of the Law of Aggregate Litigation, § 3.13 (2010); *cf. Blanchard v. Bergeron,* 489 U.S. 87, 95, 109 S.Ct. 939, 103 L.Ed.2d 67 (1989) (cautioning against an "undesirable emphasis" on monetary "damages" that might "shortchange efforts to seek effective injunctive or declaratory relief.")).

*Schulte v. Fifth Third Bank*, 805 F.Supp.2d 560, 599 (N.D. Ill. 2011) ("*Fifth Third Bank*") (Dow, J.) (awarding a one-third fee).

> **2.    The Claims Here Are, If Anything, More Complex Than Those In Prior Similar Cases, And This Complexity Has Caused Greater Amounts Of Risk, Allocation Procedures, Amounts of Expenses, And Delays In Payment Of Fees And Expenses**

The claims here are more complex than those in prior commodity futures cases in which a one-third fee was awarded. For example, here the alleged wrongdoing was focused on specific periods within the Class Period, and the Class includes not just commodity futures traders (as in the foregoing cases) but also physical cheese purchasers and physical milk purchasers as well. These complications necessitated significant additional attorney time and expert work to analyze, and prosecute the claims. They also required additional expert work, retention of allocation counsel, and caused two separate mediations in order to allocate the Settlement Fund in a clearly fair and reasonable manner.

4

3. **The Requested Fee Is Further Fair And Reasonable Because, In The Sixth Year Of Litigation, It Represents Only A Modest 1.34 Multiplier To Compensate For Risks And Delays In Payment**

a. **Additional Cases Awarding A One-Third Fee**

Many additional cases have awarded a one-third fee. *Goldsmith*, 1995 WL 17009594 (awarding 33 1/3% of common fund); *In re Lithotripsy Antitrust Litig.*, 2000 WL 765085 at *2 ("…33.3% of the fund plus expenses is well within the generally accepted range of the attorneys' fee awards in class-action antitrust lawsuits."); *In re Spyglass Inc. Securities Litig.*, No. 99-cv-0512 (N.D. Ill.) (awarding 33.0% of common fund).[5]

b. **The Lodestar Here Is A Modest 1.34**

Finally, the requested fee represents a 1.34 multiplier to compensate for risks and delay in payment. This is at the low end of the awards in prior similar cases. *See* Argument Point III.A.4 *infra*.

## II.     STATEMENT OF FACTS

A. **Chronology**

A detailed forty-one paragraph summary of the going-on six years of proceedings herein, has been set forth in Exhibit A hereto. In summary, Class Counsel performed professional services to prosecute the claims and provide the benefits of the Settlement to the Class through

---

[5] *See* also *Taubenfeld v. Aon Corp.*, 415 F.3d 597, 598, 600 (7th Cir. 2005) (affirming a fee award of 33⅓%); *Retsky Family Ltd. P'ship v. Price Waterhouse, LLP,* No. 97 C 7694, 2001 WL 1568856 (N.D. Ill Dec. 10, 2001) (awarding 33 1/3% of common fund); *Rehm v. Eagle Fin. Corp.,* 1998 U.S. Dist. LEXIS 20015 (N.D. Ill. Dec. 8, 1998) (same); *In re Abbott Labs. Sec. Litig.*, No. 92-C-3869, 1995 WL 792803 (N.D. Ill. Jul. 3, 1995) (same); *Liebhard v. Square D Co.,* No. 91 C 1103 (N.D.Ill. Jun. 6, 1993) (same); *Hammond v. Hendrickson*, No. 85 C 9829 (N.D.Ill. Jun. 20, 1992) (same); *Gaskill v. Gordon*, 942 F. Supp. 382, 388 (N.D. Ill. 1996) (awarding 38% of common fund); *First Interstate Bank of Nevada, N.A. v. National Republic Bank of Chicago*, No. 80 C 6401, slip op. at 2 (N.D.Ill. Feb. 12, 1988) (awarding 39% of common fund).

the following steps. Class Counsel (a) sought and obtained prompt pre-complaint discovery, (b) prepared lengthy, detailed pleadings, (c) prepared comprehensive oppositions to the multiple motions to dismiss, (d) prepared amended pleadings, (e) conducted and reviewed party and non-party document discovery (f) conducted settlement negotiations with DFA, (g) briefed and conducted three mediation proceedings and presentations before the Mediator, one mediation on the merits, and two mediations on the allocation of the Settlement, (h) prepared and filed an amended complaint adding an alleged conspiracy with Schreiber as an additional means of recovery against DFA, (i) briefed Schreiber's motion to dismiss, (j) filed six briefs to overcome Schreiber's objections to preliminary approval and motion for a protective order. *See* Facts ¶¶1-17.

**B.    Class Counsel's Lodestar And The Expenses For Experts**

Lodestar equals the amount of professional hours devoted to a matter multiplied by the respective hourly rates for the professionals working on such matter. The total fee compensable lodestar for the professional services provided by Class Counsel is $11,451,210.80.

Class Counsel used their current hourly rates in calculating their foregoing lodestar. *See* Class Counsel Declarations listed in fn. 2.

In determining the amount of hours of Class Counsel's time working on the claims against DFA, the professional services devoted to working on the claims against Schreiber after December 24,2012 have been excluded. The reasoning for this is as follows. Before December 24, 2012, Class Counsel's work on DFA-Schreiber claims directly threatened DFA and directly encouraged it to agree to the Settlement. Once DFA signed documents agreeing to settle, Class Counsel's prosecution of the DFA-Schreiber claims became solely against Schreiber and no longer encouraged DFA to settle.

### III.   ARGUMENT

**A.   THE REQUESTED ATTORNEYS' FEES ARE REASONABLE AND SHOULD BE AWARDED BY THIS COURT**

#### 1.   The Court Should Apply The Percentage-Of-The-Fund Approach

When a District Court in the Seventh Circuit determines a fee award, it must do its "…best to award counsel the market price for legal services, in light of the risk of nonpayment and the normal rate of compensation in the market at the time." *In re Synthroid Mktg. Litig.,* 264 F.3d 712, 718 (7th Cir. 2001); *Fifth Third Bank*, 805 F.Supp.2d at 597.

While acknowledging that either the percentage method or the lodestar-multiplier method is acceptable, the Seventh Circuit has endorsed the percentage-of-the-fund method in common fund cases as a means for the court to award fees "..at a level that will approximate what the market would set." *Gaskill v. Gordon*, 160 F.3d 361, 362-63 (7th Cir. 1998).

Decisions in this District have previously found that "…the Seventh Circuit strongly endorsed the percentage [of the Fund] method of computing appropriate fee awards in class action common fund cases." *See Goldsmith, et al. v. Technology Solutions Co., et al.*, 92 C 4374, 1995 WL 17009594 at *7 (N.D. Ill. Oct. 10. 1995) and *In re Lithotripsy Antitrust Litig.*, 98-cv-8394, 2000 WL 765085 at *2 (N.D. Ill. June 12, 2000) ("[t]he 7th Circuit Court of Appeals, as well as a majority of other circuit courts have approved the use of the percentage of the fund method to award attorneys' fees in class-action/common fund cases.").

The percentage method is consistent with, and is intended to mirror, the private marketplace for negotiated contingent fee arrangements. *See Kirchoff v. Flynn,* 786 F.2d 320, 324 (7th Cir. 1986) ("When the 'prevailing' method of compensating lawyers for 'similar services' is the contingent fee, then the contingent fee *is* the 'market rate.'") (emphasis in original). In the

marketplace, the "contingent fee uses private incentives rather than careful monitoring to align the interests of lawyer and client. The lawyer gains only to the extent his client gains." *Id.* at 325.

### 2.        Complexity, Length, And Expense

In determining the fairness of a settlement, courts consider "the likely complexity, length and expense of the litigation." *Isby,* 75 F.3d at 1199. The claims against DFA involved complex factual and legal issues. Antitrust litigation is complex. *See In re Lithotripsy Antitrust Litigation*, 2000 WL 765086, at *2 (N.D. Ill. 2000) (antitrust claims involve complex issues); *see also In re Processed Egg Products Antitrust Litig.,* 2012 WL 5467530, at *4 (E.D. Pa. Nov. 9, 2012) ("This litigation, like most antitrust cases, has been exceedingly complex, expensive and lengthy.") (internal quotation and citation omitted); *Arenson v. Board of Trade of City of Chicago*, 372 F. Supp. 1349, 1352-1353 (N.D. Ill. 1974) (finding antitrust claims relating to commodity futures markets presented inherently complex issues.).

In the "esoteric" commodity futures markets (*see* fn. 4 *supra*), the complexity of antitrust and manipulation claims greatly increases. As this complexity indicates, litigating these claims through class certification, summary judgment, trial, and appeals would have required many years and very substantial expense.

### 3.        Class Counsel's Extensive Work In This Risky Case, Resulted In An Excellent Result For The Class

When determining the legal fees in a common fund case, the Court should also consider "…the risk of nonpayment a firm agrees to bear…the quality of its performance…." *In re Synthroid*, 264 F.3d at 721; s*ee also Pennsylvania v. Delaware Valley Citizens' Council For Clean Air*, 483 U.S. 711, 729 (1986) ("The risk of nonpayment should be determined at the beginning of the litigation.").

All litigation is risky. Even a meritorious case can be lost at trial. *See In re JDS Uniphase Corp. Sec. Litig.* No. C-02-1486 CW(EDL), 2007 WL 4788556, at *1 (N.D. Cal. Nov. 27, 2007) (after a lengthy trial, jury returned a verdict against plaintiffs and the action was dismissed). Further, a successful jury verdict does not eliminate the risk to the class. *See Robbins v. Koger Props., Inc.,* 116 F.3d 1441, 1449 (11th Cir. 1997) (reversing $81 million jury verdict.); *Anixter v. Home-Stake Prod Co.,* 77 F.3d 1215, 1233 (10th Cir. 1996) (overturning plaintiffs' verdict following two decades of litigation); *In re Apple Computer Sec. Litig.,* No. C-84-20148(A)-JW, 1991 U.S. Dist. LEXIS 15608, at *4, 1991 WL 238298 (N.D. Cal. Sept. 6, 1991) ($100 million jury verdict vacated on post-trial motions).

That applies to all civil cases, including cases like this one, that follow proceedings brought by the government. The *BP Propane*, *Natural Gas*, and *Soybeans* actions awarding a one-third fee all followed prior suits. In *BP Propane*, there were prior criminal charges and confession of guilt. *U.S. v. BP America Inc.*, No. 07 CR 683 (N.D. Ill.). In *Natural Gas*, there were multiple government settlements. *In re Natural Gas*, 358 F.Supp.2d 336, 340 n. 3, 341 (S.D.N.Y. 2005). In *Soybeans*, there were a complaint and related proceedings brought by the exchange on which the transactions had occurred. *Soybeans*, 892 F.Supp. 1025, 1039-1040 (N.D. Ill. 1995).

With respect to antitrust claims, the government, in order to prove criminal claims, does not have the burden of establishing causation, impact, and damages. Establishing those elements involves the determination of an intangible – what the prices would have been "but for" the violation. This is challenging. "Indeed, the history of antitrust litigation is replete with cases in which antitrust plaintiffs succeeded at trial on liability, but recovered no damages, or

only negligible damages, at trial or on appeal." *In re NASDAQ Market-Makers Antitrust Litig.*, 187 F.R.D. 465, 476 (S.D.N.Y. 1998).

Thus, even where the defendants, unlike here, had entered guilty pleas to criminal price fixing charges, and also had been criminally convicted, a plaintiff recently tried its civil claims for damages to a jury. *See In re TFT-LCD (Flat Panel) Antitrust Litig.*, Special Verdict (N.D. Cal. Dkt. No. 8562, Sep. 3, 2013). However, the risks of proving causation, impact, and the but for prices were so substantial that the jury awarded it $0 in such damages. *Id.*

Such causation, impact, and damages proof always involves a battle of the experts. In "such a battle, Plaintiffs' Counsel recognize the possibility that a jury could be swayed by experts for Defendants," and find that only a fraction of the amount of damages for which Plaintiffs submitted proof are proper. *See In re Am. Bank Note Holographics, Inc., Sec. Litig.,* 127 F. Supp. 2d 418, 426-27 (S.D.N.Y. 2001).

Operating under the foregoing conditions of substantial risk, Class Counsel skillfully have performed the following services in prosecuting the claims against DFA for going on six years now: (a) sought and obtained prompt pre-complaint discovery, (b) prepared lengthy, detailed pleadings, (c) prepared comprehensive oppositions to the multiple motions to dismiss, (d) prepared amended pleadings, (e) conducted and reviewed party and non-party document discovery (f) conducted settlement negotiations with DFA, (g) briefed and conducted three mediation proceedings and presentations before the Mediator, one mediation on the merits, and two mediations on the allocation of the Settlement, (h) prepared and filed an amended complaint adding an alleged conspiracy with Schreiber as an additional means of recovery against DFA, (i) briefed Schreiber's motion to dismiss, (j) filed six briefs to overcome Schreiber's objections to preliminary approval and motion for a protective order. *See* Facts ¶¶1-17.

In addition, Class Counsel negotiated all Settlement documents including the Settlement Agreement, and worked with the Settlement Administrator to provide notice, answer questions from Class members, and give reasonable notice to the Class.

The quality of Class Counsel's extensive foregoing professional services is best indicated by the substantial benefits Lead Counsel achieved for the Class. As further support for the quality of Lead Counsel's services, the Court was presented with their respective credentials when it appointed Lead Counsel.

**4.     The Resulting 1.34 Multiplier To Compensate For Risks And Delays In Payments Is At The Low End Of Prior Lodestar Multiplier Cross-Checks**

Courts employing the percentage-of-the fund method, sometimes apply a lodestar-multiplier "cross-check" to gauge the reasonableness of the percentage award. *Compare Montgomery v. Aetna Plywood, Inc.*, No. 95-C-3193, 1999 U.S. Dist. Lexis 4432, **22-23 (N.D. Ill. Mar. 18, 1999) (the purpose of the lodestar cross check is to "…ensure that the percentage method does not produce either an extremely low or extremely high result.") *with Cook v. Niedert*, 142 F.3d 1004, 1003 (7th Cir. 1998) ("we have never ordered the judge to ensure that the lodestar results mimic the percentage approach").

Class Counsel have spent a total of 18,617.59 hours of professional time on this action since 2008. McGrath Decl. ¶14. The total lodestar value of this time is $11,451,210.80. *Id.* Thus, the one-third requested fee award would thus represent a lodestar multiplier of approximately 1.34. *Id.*

The 1.34 requested multiplier is at the lower end of the range of multipliers that have been previously approved in this District and to substantially less than lodestar multipliers in various prior CEA manipulation cases. *See Harman v. Lyphomed, Inc.*, 945 F.2d 969, 976 (7th

Cir. 1991) (multipliers anywhere between 1.0 and 4.0 have been approved); *see also In re BP*

*Propane Direct Purchaser Antitrust Litig.*, 06-CV-3621 (N.D. Ill.) (JBZ) Docket No. 182

(awarding lodestar multiplier of 2.7); *In re Sumitomo Copper Litig.*, 74 F.Supp.2d 393

(S.D.N.Y. 1999) (awarding lodestar multiplier of 2.5); *In re Natural Gas Commodity Litig.*, 03-

CV-6186 Docket No. 507 (VM) (S.D.N.Y.) (awarding lodestar multiplier of 1.86).

      **B.**      **THE REQUESTED REIMBURSEMENT OF COSTS AND EXPENSES IS FAIR AND REASONABLE AND SHOULD BE APPROVED**

Under the common fund doctrine, attorneys who generate a benefit for the class are

entitled to the reimbursement of reasonable litigation expenses pursuant to a market-based

approach. *See Great Neck Capital Appreciation Inv. Partnership, L.P. v.*

*PricewaterhouseCoopers, L.L.P.,* 212 F.R.D. 400, 412 (E.D. Wis. 2002) ("The paying arms-

length market typically reimburses lawyers for expenses . . .") *citing In re Synthroid*, 264 F.3d

at 722.

Class Counsel paid total costs of $487,881.24. *See* McGrath Decl. ¶14.

| Firm | Expenses |
|---|---|
|  |  |
| Lovell Stewart Halebian Jacobson LLP | $292,971.88 |
| Wolf Haldenstein Adler Freeman & Herz LLP | $162,745.78 |
| Edward W. Cochran | $0.00 |
| Finkelstein Thompson LLP | $164.45 |
| Lowey Dannenberg Cohen & Hart, P.C. | $505.80 |
| Mary Jane Fait | $3,481.19 |
| Complex Litigation Group | $25,752.77 |
| Miller Law LLC | $2,259.37 |
|  |  |
| **TOTAL** | $487,881.24 |

McGrath Declaration ¶14.

**Expert Costs.** In developing, prosecuting and settling these complex claims, Lead

Counsel needed to gauge whether the conduct of DFA was economic and commercially

reasonable.  Significant expert consultation was necessary and advisable to do this.  Similarly, in order to estimate the degree and duration of impact on the market and the dollar amounts of DFA's damages exposure, Lead Counsel had to consult further with experts.

In the foregoing context, the total expenses for experts were $197,552.67.  Also, expenses for legal research were $142,989.58, and for the Mediator were $53,669.71.  McGrath Decl., ¶¶11,15.  The expert costs, legal research, and the Mediator's charges for the three mediations represent 80.8% of the total expenses.

Lead Counsel respectfully requests that the Court award reimbursement of litigation costs and expenses out of the common fund in the amount of $487,881.24.

## CONCLUSION

For the reasons stated above, Lead Counsel respectfully requests (a) that the Court award attorneys' fees equal to one-third of the $46,000,000 common fund, or $15,333,333.33 and (b) reimbursement of expenses reasonably incurred in the amount of $487,881.24.

Dated: July 20, 2014

Respectfully submitted,

By: */s/ Christopher Lovell*
Christopher Lovell
Christopher M. McGrath
Amanda N. Miller
**LOVELL STEWART HALEBIAN JACOBSON LLP**
61 Broadway, Suite 501
New York, New York 10006
Telephone:     (212) 608-1900
Facsimile:     (212) 719-4775

*Lead Counsel for Direct Purchaser Plaintiffs*

Theodore B. Bell
**WOLF HALDENSTEIN ADLER FREEMAN & HERZ LLP**
55 West Monroe Street, Suite 1111

Chicago, Illinois 60603
Telephone:  (312) 984-0000

Fred T. Isquith
**WOLF HALDENSTEIN ADLER FREEMAN &
HERZ LLP**
270 Madison Avenue
New York, New York 10016
Telephone:  (212) 545-4600
Facsimile:  (212) 545-4653

***Liaison Counsel for Direct Purchaser Plaintiffs***

Marvin Alan Miller
**MILLER LAW LLC**
115 S. LaSalle Street, Suite 2910
Chicago, IL 60603
Telephone: (312) 332-3400
Facsimile: (312) 676-2676

Mary Jane Fait
**LAW OFFICES OF MARY JANE FAIT**
115 S. LaSalle Street, Suite 2910
Chicago, IL 60603
Telephone: (847) 922-679