# Exhibit A

**EXHIBIT A**

1. On December 17, 2008, the first complaint was filed herein. *See Adam Properties, Inc. v. Dairy Farmers of America, Inc.*, No. 08 Civ. 7232 (N.D. Ill.). Thus, the work by Class Counsel to produce and secure the benefits of this settlement for Class members is now well into its sixth year.

2. On or about June 15, 2009, the Judicial Panel on Multidistrict Litigation ("JPML") transferred these actions to this District to be consolidated before the Honorable William J. Hibbler. *See* ¶3.

3. On March 4, 2010, after resolving a contested lead counsel motion and hearing arguments on Plaintiffs' motion to compel discovery, the Court, over Defendants' objections, ordered certain document discovery (Dkt. No. 75) before Plaintiffs were obligated to file their Consolidated Class Action Complaint consolidating all actions.

4. On March 20, 2010 after they had engaged in extensive consultation with experts, performed a thorough factual investigation, and brought to bear their long experience in prosecuting the types of complex claims at issue here, Lead Counsel were able to complete the preparation of and filed an extremely detailed 53-page Consolidated Class Action Complaint against the DFA Defendants. Dkt. No. 79.

5. Therein, Plaintiffs alleged claims for violations of Section 1 and 2 of the Sherman Antitrust Act, 15 U.S.C. §§1 and 2 *et seq.* ("Sherman Act"); manipulation in violation of Section 9 of the Commodity Exchange Act ("CEA"), 7 U.S.C. §13; violation of the Racketeer Influenced and Corrupt Practices Act ("RICO"), 18 U.S.C. §1961 *et seq.*; and claims for unjust enrichment and restitution under State common law.

6. On April 9, 2010, Plaintiffs filed a Corrected Consolidated Class Action Complaint ("Complaint"). Dkt. No. 86.

7. On May 19, June 3 and June 9, 2010, the different DFA Defendants moved to dismiss **all** claims in the Complaint. Dkt. Nos. 98, 100-101, 106 and 110; *see* ¶7.

8. Moreover, in such motions, the DFA Defendants expressly emphasized as follows. To any extent that their initial motions were not successful, they would move at a later date, for summary judgment against the claims under Section 1 of the Sherman Act based upon the grounds that the DFA Defendants were not a separate group and were incapable of conspiring with one another under the doctrine of *Copperweld Corp. v. Independence Tube Corp.*, 467 U.S. 752 (1984) ("*Copperweld*").

9. On June 21 and August 6, 2010, after they had performed detailed research and extensive analysis of DFA's motions, Lead Counsel filed Plaintiffs' oppositions to the DFA Defendants' motions to dismiss the Complaint. Dkt. Nos. 115, 123-124.

10. On July 21 and August 20, 2010, the DFA Defendants filed their replies in support of their motion to dismiss the Complaint. Dkt. Nos. 119-121, 126.

11. On February 4, 2011, the Court (the Honorable William J. Hibbler) granted in part and denied in part Defendants' motions to dismiss the Complaint. Docket No. 142; *In re Dairy Farmers of America, Inc. Cheese Antitrust Litig.*, 767 F.Supp.2d 880 (N.D. Ill. 2011). Lead Counsel believes that, to the extent Judge Hibbler denied the motion to dismiss these complex claims, such denial was based upon (and repeatedly quoted) the detailed factual allegations that Class Counsel had assembled in the Complaint.

12. Nonetheless, Judge Hibbler **granted Defendants' motion to dismiss** all claims for damages stemming from the purchase of physical milk and other products priced on the basis

of the government minimum milk prices. 767 F.Supp.2d at 894-895. Judge Hibbler also granted Defendants' motion to dismiss Plaintiffs' monopolization claims, including Plaintiffs' claim of conspiracy to monopolize, with respect to those Plaintiffs whose injuries stem from the inflated price of cheese due to lack of standing but otherwise denied Defendants' motion to dismiss Plaintiffs' monopolization claims. 767 F.Supp.2d at 901-909. The Court further granted Defendants' motion to dismiss Plaintiffs' claims under the Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. §1961 *et seq*. 767 F.Supp.2d at 909-910.

13. However, the Court denied the motion to dismiss the antitrust claims against the claims of physical cheese purchasers. 767 F.Supp.2d at 906-907. Plaintiffs take the position that Judge Hibbler also (a) denied the motion to dismiss the CEA claims, reasoning that futures trading was based on expectations of the future rather than a government minimum price, 767 F.Supp.2d at 896-897, and (b) denied Defendants' motion to dismiss Plaintiffs' **equitable** claims for unjust enrichment. 767 F.Supp.2d at 909.

14. During 2010-2012, Lead Counsel obtained and reviewed (with experts) substantial party and non-party document productions, totaling more than 223,252 pages of documents.

15. Lead Counsel was still reviewing these documents, conferring with experts, and preparing for depositions when, by March 2011, the DFA Defendants approached Lead Counsel about settlement.

16. Between 2011 and December 2012, multiple face to face meetings (including with DFA's CEO) occurred between Lead Counsel and DFA. Numerous exchanges of information, presentations, and arguments were made.

3

17. Class Counsel used their extensive analyses of the documents and other materials produced, the analyses by their experts, and other materials in order to prepare repeated written submissions to the DFA Defendants concerning multiple reasons for and potential amounts of DFA's liabilities in this action.

18. These negotiations included, among other things, the following. On June 29, 2011, the parties participated in an all-day settlement mediation under the direction of a nationally recognized mediator, The Honorable Daniel Weinstein (Ret.). This mediation followed the presentation of extensive briefing by both parties. After an all-day mediation session on June 29, 2011, Judge Weinstein made a Mediator's proposed settlement recommendation to the parties. Plaintiffs rejected the recommended settlement.

19. Between July 1, 2011 and March 2012, Lead Counsel continued to negotiate with and push the DFA Defendants. Lead Counsel then continued to use their extensive analyses of the documents and other materials produced, the analyses by their experts, and other materials in order to prepare repeated written submissions to the DFA Defendants concerning multiple reasons for and potential amounts of DFA's liabilities in this action.

20. This included by directly addressing their argument that the antitrust claims were subject to dismissal under the *Copperweld* intra-corporate conspiracy doctrine. *See* ¶8 above. Specifically, Lead Counsel determined that there was reason to believe that, by May 21, 2004, DFA likely would not be able to continue to hold prices at their inflated levels if a large difference or "spread" between the prices of CME block and CME barrel cheese persisted.

21. By March 22, 2012, Plaintiffs filed a Second Amended Consolidated Class Action Complaint ("Second Complaint"), adding a new defendant, Schreiber Foods, Inc. ("Schreiber"),

4

and also alleging claims under California law, including an alleged violation of the Cartwright Act/California Bus. & Prof. Code §§16720, and 16750, *et seq*. Dkt. No. 245.

22. Further, by March 2012, the DFA Defendants and Plaintiffs had agreed to $46,000,000 as the cash consideration. This, alone, was approximately 25% greater cash consideration than had been recommended by the Judge Weinstein and represented a substantial enhancement for the recovery for the Class.

23. Between March 23 and December 30, 2012, Lead Counsel and the DFA Defendants continued to negotiate the remaining terms of the Settlement, including the remedial relief.

24. Also, various Class Counsel conducted a mediation before Judge Weinstein to allocate the Net Settlement Fund fairly among three Plaintiffs' groups: commodity futures traders, physical cheese purchasers, and physical milk purchasers. The parties negotiated and completed all documents. Each of the Allocation Counsel for the Class III milk futures contract traders, physical cheese purchasers, and physical milk purchasers prepared and submitted mediation briefs. Judge Weinstein conducted telephone calls and an in person mediation. As a result of that mediation, Judge Weinstein determined and the respective Allocation Counsel agreed to the discounts reflected in the Plan of Allocation for physical milk purchasers' claims, and the physical cheese purchasers' claims.

25. By January 14, 2013 all the Settlement Agreement and allocation documents had been negotiated by Plaintiffs and DFA Defendants, the Settlement Agreement was completed, and the parties had all executed the settlement to settle the Class'[1] claims based on each party's informed view of the factual and legal risks that each faced herein.

---

[1] *See* Dkt. No. 495 at ¶2 (defining the Class in the Settlement Agreement).

26. On March 21, 2013, Plaintiffs filed a motion seeking preliminary approval of the proposed Settlement. Dkt. No. 327.[2] On March 28, 2013, the Court held a conference on Plaintiffs' preliminary approval motion. Dkt. No. 333.

27. On April 10, 2013, Schreiber filed a brief in opposition to Plaintiffs' preliminary approval motion. Dkt. No. 339. On April 24, 2013, Plaintiffs filed a reply brief in further support of preliminary approval. Dkt. No. 340.

28. On April 24, 2013, Schreiber filed a motion for a protective order. Dkt. No. 342. Schreiber's motion for a protective order sought to prevent Plaintiffs from obtaining Schreiber's customer list for purposes of sending notice of the Settlement to the Class. *Id*.

29. On May 8, 2013, Plaintiffs filed an opposition to Schreiber's motion for a protective order. Dkt. No. 348. Schreiber filed a reply on May 15, 2013. Dkt. No. 349. Plaintiffs and Schreiber each filed sur-replies regarding Schreiber's motion for a protective order on, respectively, May 23, 2013 and May 28, 2012. Dkt. Nos. 354, 357. Plaintiff filed a further response on June 4, 2013. Dkt. No. 360.

30. On December 2, 2013, the Court held a status hearing on Plaintiffs' motion for preliminary approval of the proposed Settlement and other matters. Dkt. No. 419. Pursuant to indications then made by the Court, Lead Counsel arranged to have new allocation counsel[3] prepare to represent Class members who transacted when the manipulation charged here had alleged artificial impact on prices (according to expert analysis) ("Impact Period"), and Class members who transacted wholly outside that Impact Period but during the Class Period.

---

[2] Plaintiffs' preliminary approval brief includes a detailed procedural history of the action from inception through the filing of such brief, *i.e.*, March 21, 2013. Dkt. No. 335, pp. 7-10.

[3] Lowey Dannenberg Cohen & Hart, P.C. and Finkelstein Thompson LLP acted as allocation counsel.

31. On December 10, 2013, the Court entered an order in order to "assist counsel in preparing for" the preliminary approval hearing to be held on December 17, 2013. Dkt. No. 424.

32. On December 17, 2013, the Court held a preliminary approval hearing. Dkt. No. 440. Also on December 17, 2013, a revised Stipulation of Settlement was filed which allowed DFA to make the $46,000,000 settlement payment into the Settlement Fund before the end of 2013. Docket No. 438.

33. During this time, Lead Counsel began to negotiate with Schreiber's counsel to attempt to resolve Schreiber's objections to preliminary approval. Lead Counsel substantially reduced the scope of the objections.

34. Between December 2013 and March 2014, Lead Counsel worked with the Allocation Counsel to provide information to them and the mediator, Judge Weinstein, for purposes of the allocation mediation.

35. The allocation counsel conducted such allocation mediation before Judge Weinstein. Judge Weinstein determined, with the mutual consent of the Allocation Counsel at the end of the mediation process, that 92.5% of the Net Settlement Fund would be paid in respect of the Impact Period and 7.5% would be paid to Class members outside of the Impact Period.

36. On January 14, 2014, Plaintiffs filed a supplemental preliminary approval brief. Dkt. No. 451. Among other things, the amended motion reported to the Court that Plaintiffs had commenced an allocation mediation concerning the Plan of Allocation. Dkt. No. 451, p. 1.

37. On March 4, 2014, Plaintiffs filed a supplemental memorandum in support of their motion seeking preliminary approval of the proposed Settlement. Dkt. 487. In this supplemental filing, Plaintiffs explained that the allocation mediation had been

completed. *Id*. Accordingly, Plaintiffs submitted a revised Plan of Allocation and certain other revised settlement papers. *Id*, Ex. 1.

38. On March 13, 2014, the Court held a hearing. The Court overruled Schreiber's remaining objection to preliminary approval, directed that notice be sent to the Class of the settlement with the DFA Defendants, and granted Plaintiffs' motion for preliminary approval. Dkt. No. 494. The Court scheduled a "fairness hearing" for August 19, 2014. *Id*.

39. Since March 13, 2014, Lead Counsel have taken steps with the settlement administrator, answered Class members' questions, otherwise provided notice to the Class, and assisted Class members in understanding the settlement and preparing to submit the forms to qualify for distributions from the cash benefit portion thereof.

40. On March 17, 2014, the Court entered a preliminary approval order that set certain deadlines in connection with the August 19, 2014 fairness hearing. Dkt. No. 495.

41. In accordance with the deadline set by this Court's March 17, 2014 Order, Lead Counsel now submit these papers in support of their motion for payment of attorneys' fees and reimbursement of expenses pursuant to Fed.R.Civ.P. 23(h).